**In the Matter of Raymond I. KLAGISS.**

No. 49S00–9104–DI–315.

Supreme Court of Indiana.

June 6, 1994.

---

**164** ◼

---

Charles E. Johnson, Indianapolis, for respondent.

Donald R. Lundberg, Executive Secretary, Indianapolis, for the Indiana Supreme Court Disciplinary Com'n.

## PER CURIAM

The Supreme Court Disciplinary Commission filed disciplinary charges against Respondent, Raymond I. Klagiss, upon his conviction in the Marion County Superior Court, Criminal Division Three, of the offense of Neglect of a Dependent, a Class B felony. By agreement of the parties, the hearing officer appointed in this matter recommended that Respondent be suspended pending final determination of this case, which recommendation was adopted by this Court in our order of October 2, 1991, suspending the Respondent *pendente lite*. After a hearing on the merits, the hearing officer tendered his report concluding that Respondent engaged in the charged misconduct. The case is now before us for final adjudication.

The Respondent was admitted to the Bar of this state on May 19, 1965. On March 30, 1989, he was indicted by the Marion County Grand Jury for the offenses of Reckless Homicide, a Class C Felony, and Neglect of a Dependent, a Class B felony. On July 20, 1990, following a trial by jury, no verdict was reached on the first charge, but Respondent was convicted of the second charge, Neglect of a Dependent. Respondent was sentenced to six years in prison.

The Indiana Court of Appeals affirmed the conviction, and his petition for transfer to this Court was denied. On May 21, 1992, Respondent filed a petition in the United States Supreme Court for a writ of *certiorari*, which petition was denied on October 5, 1992. Thereafter, he petitioned the United States District Court for the Southern District of Indiana for a writ of *habeas corpus*, which petition was denied on June 3, 1993.

There is now pending before the United States Court of Appeals for the Seventh Circuit an appeal from the aforementioned denial of Respondent's petition for *habeas corpus*.

Respondent's conviction arose out of conduct which took place on March 9, 1988. The unpublished opinion of the Indiana Court of Appeals in the criminal case, Court of Appeals Case Number 49A02–9008–CR–478, best describes the relevant facts.

Respondent and his mother, Jadviga Klagiss, came to the United States in the 1950s from their native country, Latvia, and eventually settled in Indianapolis. After completing his legal education, Respondent entered the private practice of law.

In the last years before her death, Jadviga suffered from a variety of physical problems, including osteoporosis, which were related to her advanced age. She occasionally was disoriented, but in many ways, was in good health and was active for a person of her age. Respondent moved into Jadviga's home some time before her death. Several weeks before Jadviga's death, Wayne Bruness, Respondent's former law associate, prepared documents deeding Jadviga's house to Respondent and granting to him her power of attorney.

At 3:30 a.m. on March 9, 1988, Kim Nimocks, a triage nurse at MetroHealth, received a phone call from Susan Stewart (now Klagiss), a nurse with whom Respondent was living in Jadviga's house. Susan asked the nurse what to do with a patient who had no pulse, was not breathing, and whose fingers had turned blue. Nimocks told Susan to call the Marion County Sheriff's Department which would notify the coroner. Susan called the sheriff's department at 4:11 a.m., some forty-one minutes after she first called MetroHealth.

The deputy coroner summoned to the scene to investigate noticed that Jadviga's body appeared to have been posed on the bed. Respondent, Susan, and Bruness all protested that no one had disturbed the body. However, the coroner also observed that the bed was soaked with urine while the deceased's bedclothes and the bed sheets were not, and that the room was quite dirty

while the rest of the house was clean. He also noted that there were numerous cuts and bruises on Jadviga's body. One of the cuts appeared to be new but was not bleeding. In addition, a bed sore was covered with a bandage which appeared to have been applied after death. When questioned about the condition of the body and the room, neither Respondent, Susan nor Bruness were able to give any satisfactory explanation.

An autopsy was performed, and the external examination revealed twenty-one separate injuries including laceration of the eyelid and a variety of new and old bruises. The internal examination revealed that the sixth cervical vertebra was severed and completely displaced. As a result of the displacement, the larynx was crushed, the tissues surrounding the vertebra suffered severe hemorrhaging, and the spinal cord was effectively severed.

The offense of criminal neglect of a dependent is defined in IC 35–46–1–4, which provides, among other things, that person having the care of a dependent, who knowingly or intentionally places the dependent in a situation that may endanger his life or health, commits a Class D felony. However, the offense is a Class B felony if it results in serious bodily injury. From the foregoing findings, we conclude that Respondent engaged in a criminal act, the neglect of a dependent, a Class B felony.

In this disciplinary proceeding, Respondent is charged with engaging in criminal conduct that reflects adversely on his fitness as a lawyer, in violation of Ind. Professional Conduct Rule 8.4(B). The commentary to Prof.Cond.R. 8.4(B) explains that:

> "Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offenses carry no such implication.... Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, or breach of trust, or serious interference with the administration of justice are in that category."

In deciding whether criminal conduct reflects on an attorney's fitness to practice, this Court examines whether a nexus exists between the Respondent's misconduct and his fitness to practice law. *Matter of Oliver* (1986) Ind., 493 N.E.2d 1237. A relevant factor in this assessment is the impact of the conduct on the public's perception of Respondent's fitness as a lawyer. *Matter of Jones* (1987) Ind., 515 N.E.2d 855; *Matter of Roche* (1989) Ind., 540 N.E.2d 36; *Matter of Walker* (1992) Ind., 597 N.E.2d 1271. In this instance, the overwhelming evidence points to Respondent's breach of trust and his culpability in the death of his own mother. This tragic crime reflects on Respondent's character not only as an individual, but also as an officer of this Court sworn to uphold the laws of this state and, as such, violates Prof. Cond.R. 8.4(B).

Having concluded that Respondent engaged in professional misconduct, we must determine an appropriate sanction. As an officer of this Court, Respondent is entrusted with the duty of upholding the integrity of the legal system and the laws of this state. Although named "neglect of a dependent", this is a crime of intentional or knowing breach of trust. Such conduct indicates the highest degree of culpability and should carry the strictest sanction.[1] With these considerations in mind, we conclude that the strongest sanction available, disbarment, is appropriate under the circumstances of this case. Accordingly, it is ordered that Respondent, Raymond I. Klagiss, is hereby disbarred.

---

1. *The American Bar Association Standards for Lawyer Sanctions* provide a comprehensive model for assessing an appropriate disciplinary sanction. The lawyer's duty and to whom it is owed, the lawyer's mental state, the injury caused by the misconduct, and relevant mitigating and aggravating factors are key elements of the model. The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result. The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct but without the conscious objective or purpose to accomplish a particular result.

Costs of this proceeding are assessed against Respondent.

DeBRULER, J., not participating.