**In the Matter of Patti Sue MULLINS.**

**No. 49S00–9305–DI–590.**

Supreme Court of Indiana.

May 9, 1995.

Patti Sue Mullins, pro se.

Donald R. Lundberg, Executive Secretary, Charles M. Kidd, Staff Atty., Indianapolis, IN, for the Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

This disciplinary action comes before us upon the statement of circumstances and conditional agreement for discipline tendered by the Respondent, Patti Sue Mullins, and the Disciplinary Commission. The formal charges giving rise to this action emanate from the Respondent's involvement in legal proceedings instituted by the parents of Sue Ann Lawrance, a woman who at that time was in a chronic, persistent vegetative state. Ultimately, that litigation came to this Court. *In the Matter of Sue Ann Lawrance* (1991), Ind., 579 N.E.2d 32. The Respondent has submitted an affidavit as contemplated by Ind.Admission and Discipline Rule 23, Section 17(a). We approve the tendered agree-

---

ment, which calls for a public reprimand to be imposed for the Respondent's misconduct. In accepting the agreement, we approve generally the facts contained therein, and take judicial notice of our findings in the *Lawrance* opinion.

The Respondent was admitted to the practice of law in Indiana in 1982, and is therefore subject to this Court's disciplinary jurisdiction. In early 1991, Sue Ann Lawrance ("Sue Ann") resided in a nursing home in Hamilton County, Indiana. Due to severe brain damage, she had been in a chronic vegetative state since approximately June, 1987. She was completely nonverbal and nonambulatory, and received all nourishment and hydration via a surgically-implanted gastric tube. In March 1991, her parents petitioned the Hamilton Superior Court for authority to compel Sue Ann's health care provider to withdraw her artificially-administered hydration and nutrition. In the petition, her parents alleged, *inter alia*, that Sue Ann had been in a persistent vegetative state since June 1987, that she was not expected to recover, that further treatment was futile, that Sue Ann could not make her own health care decisions and had no appointed health care representative, and that applicable Indiana law provided them with the authority to order withdrawal of hydration and nutrition. After hearing in the Hamilton Superior Court on March 26, 1991, the trial court judge issued a May 2, 1991 order that held, *inter alia*, that Sue Ann's parents had legal authority to consent to the withdrawal of her artificially-delivered nutrition and hydration. Sue Ann was moved from the Hamilton County nursing home to St. Vincent's Hospice in Marion County some time after May 2, 1991.

On or about March 26, 1991, the Respondent had created the "Christian Fellowship with the Disabled, Inc.," an Indiana corporation, by filing articles of incorporation in the office of the Indiana Secretary of State. On May 16, 1991, the Respondent filed on behalf of the Christian Fellowship a "Petition for Appointment of Guardian Over an Adult Incompetent" in the probate division of the Marion Superior Court. In that petition, the Respondent sought establishment of an emergency guardianship over Sue Ann, asserting therein that:

> at the present time Sue Ann Lawrance is the victim of intentional, willful, and purposeful neglect and/or abuse by her parents, her medical doctors, and/or her health care providers, in that she is being denied essential nutrition and hydration contrary to [law].

Hearing on the petition was held in Marion Superior Court, and on May 17, 1991, the court appointed the Respondent as temporary limited guardian whose authority was limited to seeking a stay or other relief from the judgment of the Hamilton Superior Court. The Respondent then secured a twenty-one day stay of the Hamilton Superior Court's order directing withdrawal of Sue Ann's hydration and nutrition. Shortly thereafter, the Respondent sent portions of Sue Ann's medical records by facsimile transmission to several news media outlets throughout Marion County, apparently in an attempt to justify or legitimize her involvement in the litigation. She resigned as temporary limited guardian on May 23, 1991, upon appointment of a successor guardian.

The Commission charged the Respondent with violations of three distinct provisions of the *Rules of Professional Conduct for Attorneys at Law*. Specifically, it charged that the Respondent violated Ind.Professional Conduct Rule 1.6 in that, by transmitting Sue Ann's medical records to various media outlets in Marion County, she revealed information relating to the representation of a client without the client's consent.[1] We find that the Respondent violated the rule. We find no legitimate or recognized justification for the Respondent's county-wide dissemination of the records.[2] Not only were Sue Ann's

---

1. Prof.Cond.R. 1.6 provides, in relevant part:

   (a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).

2. For example, Prof.Cond.R. 1.6(b)(2) provides that a lawyer may reveal information relating to representation to the extent the lawyer reason-

medical records "information relating to representation of a client," but they also represented non-public records under Indiana Public Record Law,[3] and confidential court records pursuant to Ind.Administrative Rule 9(K). A lawyer must make every effort practicable to avoid unnecessary disclosure of information relating to a representation, to limit disclosure to those having a need to know it, and to obtain protective orders or make other arrangements minimizing the risk of disclosure. *Comment* to Prof.Cond.R. 1.6.

The Commission also charged that the Respondent's release of the medical records without the authorization of her ward or of any court violated Prof.Cond.R. 4.4 in that the act had no substantial purpose other than to embarrass, delay, or burden a third person during the representation of a client.[4] We agree, and now find that the Respondent violated Prof.Cond.R. 4.4.

Also alleged is violation of Prof.Cond.R. 3.3(d), based on the Respondent's requesting relief in the Marion Superior Court, via an *ex parte* proceeding, without sufficiently or fully advising it of all relevant aspects of the pending parallel proceeding in the Hamilton Superior Court.[5] We find that the Respondent violated Prof.Cond.R. 3.3(d).

In deciding to accept the agreed sanction, that being a public reprimand, this Court considered several factors. Most generally, we recognize that the Respondent has no prior disciplinary record and has devoted significant time and energy during her legal career to public causes. We are mindful that the Respondent's actions in this case were apparently not motivated by possible financial gain or some other more sinister motive, but instead resulted from her misguided pursuit of ideological objectives. We are also somewhat influenced by our interest in promoting agreed resolutions of disciplinary actions.

Absent these considerations, we might well have rejected the agreed public reprimand in favor of a more stringent sanction. We can find no indication that the Respondent was pursuing anything other than her own personal objectives through her involvement with Sue Ann. We find nothing to indicate that the Respondent even knew Sue Ann. She was interested in Sue Ann "only in the generic sense that any person who makes the effort to go to court is interested." *In the Matter of Lawrance*, 579 N.E.2d 32, 44. Clearly, the Respondent was a stranger to the Lawrance's deeply personal family litigation, desiring only to further her own agenda. We remind lawyers that duty to the law comes before personal objectives where the two are in conflict. When a lawyer loses sight of her purpose and uses the legal system for personal vengeance, she fails in her obligations to her client, profession, and self. *See In re Crumpacker* (1978), 269 Ind. 630, 663, 383 N.E.2d 36.

In light of the above, the Respondent, Patti Sue Mullins, is hereby reprimanded and admonished for her misconduct.

Costs of this proceeding are assessed against the Respondent.

---

ably believes necessary to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client. The rule's *Comment* provides that a lawyer may respond to any allegations to the extent the lawyer believes reasonably necessary to establish a defense.

**3.** I.C. 5–14–3–4(a)(8).

**4.** Prof.Cond.R. 4.4 provides:

In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.

**5.** Prof.Cond.R. 3.3(d) provides:

(d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse.