In the Matter of William DROZDA.

No. 45S00–9105–DI–422.

Supreme Court of Indiana.

June 16, 1995.

Michael E. Halpin, Gary, for respondent.

Donald Lundberg, David B. Hughes, Staff Atty., Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

On June 26, 1991, the Disciplinary Commission filed an amended verified complaint for disciplinary action charging Respondent William Drozda with ten counts of lawyer misconduct. On September 24, 1991, the Commission and Respondent agreed to Respondent's suspension from the practice of law pending final outcome of this matter. Based on this agreement and the recommendation of the hearing officer appointed by this Court to hear this case, this Court suspended Respondent *pendente lite* on December 11, 1991. Following amendments to the charges, which added three additional counts, the hearing officer heard this matter, and now submits for our review her findings of fact and conclusions of law. Neither party has exercised its right to petition this Court for review of the hearing officer's report, and we therefore now adopt the factual findings contained therein. As a preliminary matter, we note that Respondent was admitted to this state's Bar in 1977, and, accordingly, is subject to this Court's disciplinary jurisdiction.

### Count I.

▪ A client retained Respondent in a personal bankruptcy in October 1988, paying Respondent an agreed $390.00 fee. Respondent told his new client that he would file a petition for bankruptcy on his behalf in about seven to ten days in order to fend off the client's persistent creditors. By February 1990, the bankruptcy petition had yet to be filed, prompting the client to inquire several times as to the status of his case. Each time, Respondent assured him that filing was imminent. Respondent also once told the client that his file had been temporarily misplaced. During this time, creditors continued to contact the client.

The client filed a grievance with the Commission in March 1990. Respondent eventually filed the petition for bankruptcy on March 16, 1990, and subsequently handled the case to its completion to the satisfaction of the client.

We now find that Respondent violated Ind.Professional Conduct Rule 1.3 [1], 8.4(c), and 8.4(d) [2] by failing to diligently or prompt-

1. Prof.Cond.R. 1.3 provides:
 A lawyer shall act with reasonable diligence and promptness in representing a client.

2. Prof.Cond.R. 8.4(c) and (d) provide:

It is professional misconduct for a lawyer to:

(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

ly pursue the filing of the bankruptcy petition, and by misrepresenting the status of the matter by informing his client, for a period of almost two years, that the petition's filing was imminent.

## Count II.

■ In April 1988, Respondent agreed to represent a client on a contingency fee basis regarding her claim against a department store. Eight or nine months passed after their agreement before Respondent took action, despite Respondent's assurances of immediate action upon taking the case. His efforts consisted of writing a letter to the department store advising it of the potential claim.

During this time, the client tried unsuccessfully to contact Respondent. She did speak to a secretary in Respondent's office on one occasion, who told her that a lawsuit against the department store had been filed, which the client later learned was untrue. In December 1989, a member of Respondent's staff told the client that the department store offered to settle the claim for $1,000.00. Despite the client's rejection of the offer, the staff member contacted the client several more times to reiterate the offer. Respondent later called the client at her home and recommended that she accept a $3,000.00 settlement. After initial hesitancy, the client finally relented upon being informed by Respondent that, if the case went to trial, it would likely be venued to an adjacent county and decided by "a bunch of hicks." Contributing to the client's change of mind was Respondent's assurances that she would receive settlement proceeds within 24 hours of signing a release. On December 19, 1989, the client signed a release at Respondent's office, and endorsed the settlement draft in order to receive her $2,000.00 portion. As directed, she returned to the office in the afternoon to get her money, only to find the office closed. Days later, Respondent told the client that he would borrow money from

his aunt to pay the client's portion, since the settlement draft had not yet cleared the bank. When Respondent failed to produce the money, the client contacted local law enforcement authorities. Shortly thereafter, Respondent forwarded a $2,000.00 cashier's check to the client.

In June 1989, the client again retained Respondent, this time for $50.00, to represent her in two claims: one against a third party insurance carrier to recompense her for damage to her car, and one against a car dealership that had repaired her car. Although Respondent quickly resolved the dispute with the dealership, he failed to pursue the claim against the insurer.

We find that Respondent did not act with requisite diligence and promptness in handling his client's matters, and therefore that he violated Prof.Cond.R. 1.3. We find he violated Prof.Cond.R. 8.4(c) by promising his client immediate receipt of settlement proceeds following execution of the release when he knew or should have known that negotiation of the settlement draft would take several days. We also conclude that Respondent violated Prof.Cond.R. 1.4 [3] by failing to keep his client reasonably informed about the status of the case, by failing to promptly comply with her requests for information, and by failing to adequately explain the department store's settlement offer to his client.

## Count III.

■ In January 1990, Respondent agreed to represent a client in a bankruptcy action. The client wanted prompt action to put an end to the frequent communications she had been receiving from creditors. On February 5, 1990, Respondent accepted from the client full payment for his anticipated services. In March, Respondent promised the client that a bankruptcy petition would be filed promptly. Although the client was unsuccessful in some fifty (50) attempts at contacting Respondent during the next four or five

(d) engage in conduct that is prejudicial to the administration of justice ...

**3.** Prof.Cond.R. 1.4 provides:
(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

months, she did eventually learn from him that her petition would be filed soon. The client was also informed on at least two occasions that her petition was being prepared and that it would be filed promptly. When it later became clear that the action had not been filed, the client submitted a grievance to the Commission. Respondent finally filed the bankruptcy petition after the grievance was filed, and completed the representation to his client's satisfaction.

We find that Respondent's delay in filing the bankruptcy violated Prof.Cond.R. 1.3. By reneging on his promise to promptly file the petition, and by thereafter causing his client to be informed that a file date was imminent, Respondent violated Prof.Cond.R. 8.4(c). He violated Prof.Cond.R. 1.4(a) by failing to keep his client adequately informed and by failing to respond to requests for information. By allowing or directing members of his staff, to whom he admittedly delegated authority, to misinform the client as to the status of the bankruptcy, Respondent violated Prof.Cond.R. 5.3(c)[4], and 8.4(a).[5] Overall, Respondent's mishandling of the representation was prejudicial to the administration of justice in contravention of Prof.Cond.R. 8.4(d).

### Count IV.

■ On April 6, 1990, a client retained Respondent to represent her in an uncontested divorce, paying Respondent $105.00 in fees and costs. The client told Respondent that she wanted her marriage dissolved quickly, since she was engaged to be remarried. She contacted Respondent several times between June and October 1990 to learn the progress of the dissolution, but neither Respondent nor his staff adequately informed her of its status. On several occasions, Respondent's office was closed and his telephone disconnected during normal business hours. Respondent never filed a petition for dissolution, and eventually refunded the client's money.

We find that, by his conduct in Count IV, Respondent violated Prof.Cond.R. 1.3, 1.4(a), 1.4(b), and 8.4(d).

### Count V.

■ On March 17, 1990, an individual desiring dissolution of her marriage visited Respondent's office. She was informed by a member of Respondent's staff that such representation would cost $355.00, and that a dissolution action would be filed by March 19, 1990. Later, the client contacted Respondent's staff several times to learn the status of her action. She was informed only that the first staff member to whom she had spoken had died, and that a new staff member would be "handling" her action. She filed a grievance with the Commission on August 13, 1990. Respondent filed a petition for dissolution on her behalf on August 30, 1990.

We find that Respondent violated Prof. Cond.R. 1.3, 1.4(a), 1.4(b), and 8.4(d). We find further that by failing to adequately supervise members of his staff or to ensure that their conduct conformed with the professional obligations of a lawyer, Respondent violated Prof.Cond.R. 5.3(b),[6] 5.3(c)(2), and 8.4(a).

---

4. Prof.Cond.R. 5.3(c) provides:

A lawyer shall be responsible for conduct of [nonlawyers employed or retained by or associated with the lawyer] that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:
(1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or
(2) the lawyer is a partner in the law firm in which the person is employed, or has some direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

5. Prof.Cond.R. 8.4(a) provides:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another.

6. Prof.Cond.R. 5.3(b) provides:

With respect to a nonlawyer employed or retained by or associated with a lawyer:

. . .

(b) A lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer . . .

## Count VI.

A client retained Respondent on May 21, 1990 to file a personal bankruptcy, which Respondent filed on June 15, 1990. On July 5, 1990, the court informed Respondent that the notice schedules filed with the petition were incomplete and defective. Respondent attended one meeting of creditors, but did nothing on the case thereafter. The United States trustee filed a motion to dismiss the action on September 18, 1990. In the meantime, the client had secured successor counsel.

We find that Respondent violated Prof. Cond.R. 1.3 and 8.4(d). We find further that the Respondent violated Prof.Cond.R. 1.1 by failing to provide competent representation.[7]

## Count VII.

In July 1978, Respondent was retained to represent clients in a civil claim against the city of Portage for wrongful arrest and detention. Respondent filed the action on June 27, 1980, but the action was ultimately dismissed on June 25, 1984 due to Respondent's failure to comply with certain provisions of the Indiana Tort Claims Act. Respondent's clients thereafter obtained counsel to represent them in a legal malpractice action against him. In 1989, Respondent and his former clients reached an agreement whereby Respondent was to pay the clients a settlement sum by periodic installments. Respondent gave them a check for $100.00, which, when presented to the bank for payment some three months later, proved unnegotiable due to the fact that Respondent's bank account had been attached and closed. This failed payment was the only payment ever attempted by Respondent in satisfaction of the agreed settlement, although Respondent did some time later reimburse his former clients the $100.00. Due to their inability to settle with Respondent, the former clients resumed efforts in the malpractice action by filing a motion for summary judgment, which was set for hearing on July 3, 1990. Moments before the hearing was to begin, Respondent filed a written notice of automatic stay and motion to stay proceedings, alleging that he had filed his own bankruptcy action in federal court. The trial court granted the stay. On July 25, 1990, the former clients sought withdrawal of the automatic stay due to the dismissal of Respondent's bankruptcy action in May 1990, approximately two months before Respondent sought a stay of the malpractice proceeding. The court granted the request.

We find that, by the conduct aforesaid, Respondent violated D.R. 6–101(A)(2) of the Code of Professional Conduct[8] and Prof. Cond.R. 8.4(d).

## Count VIII.

Between April 11 and July 24, 1989, three separate criminal actions, two of which contained felony counts, were filed against Respondent's client. Although Respondent entered his appearance on behalf of the client, he failed to appear at two scheduled court appearances, including a scheduled jury trial of all three cases. Respondent was later found to be in contempt of court for his failure to appear at the trial. The court appointed successor counsel for the client.

We find that Respondent violated Prof. Cond.R. 1.3 and 8.4(d). We find further that he violated Prof.Cond.R. 3.4(c)[9] by failing to appear for a scheduled trial.

## Count IX.

After entering an appearance on behalf of a criminal defendant in April 1990, Respondent failed to appear at three subsequent court hearings. The presiding trial

---

7. Prof.Cond.R. 1.1 provides:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

8. Respondent was charged under the now-superseded *Code of Professional Responsibility,* in effect at the time of some of the misconduct at issue in this count. D.R. 6–101(A)(2) provides:

(A) A lawyer shall not:
 (2) Handle a legal matter without preparation adequate in the circumstances.

9. Prof.Cond.R. 3.4(c) provides:
A lawyer shall not:

 . . . .

 (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.

court judge eventually appointed successor counsel to represent the defendant.

By this conduct, Respondent violated Prof. Cond.R. 1.3 and 8.4(d).

### Count X.

■ After obtaining a dissolution on behalf of a client, the court ordered Respondent to prepare a proposed decree of dissolution and notice and order for income withholding. Respondent's client thereafter attempted to pay his child support obligation through the clerk of the trial court, but his payments were returned to him due to Respondent's failure to file the proposed decree or order for income withholding. Respondent finally filed the documents on July 25, 1990, but the court rejected both and returned them to Respondent for corrections. He submitted amended versions on September 26, 1990, which were formally accepted on October 17, 1990.

We now find that by his misconduct in Count X, Respondent violated Prof.Cond.R. 1.1, 1.3, and 8.4(d).

### Count XI.

■ A client retained Respondent on April 3, 1991 to file a petition for bankruptcy, and, several days later, paid Respondent $420.00 in fees and costs. Respondent assured his client that the proper papers would be filed the following week. By May 10, 1991, Respondent had yet to file a bankruptcy petition on his client's behalf. The client's wages continued to be garnished. Apparently, however, the delay in filing the bankruptcy was intentional on the part of Respondent, as he and his client were involved in "bankruptcy exemption planning." The client thereafter attempted to contact Respondent approximately ten (10) times by telephone, but only reached Respondent's answering machine. Respondent did not return the calls, and closed his law office without filing the action or refunding any of his client's money.

We find that this conduct violates Prof. Cond.R. 1.3, 8.4(c), and 8.4(d).

### Count XII.

■ Respondent was retained in early November 1989 to represent an individual against a drunken driving charge. Respon-

dent's new client paid him $500.00 toward his quoted fee of $750.00. Respondent filed his appearance shortly thereafter, waived initial hearing, and requested a pre-trial conference. Later, Respondent or his staff members informed the client that they would keep him apprised of upcoming hearing dates. Both Respondent and his client failed to appear at a scheduled pre-trial conference on March 9, 1990. The court reset the conference for May 7, 1990. After Respondent again failed to appear, the court issued a warrant for the client's arrest, and so informed him of this fact by certified letter. Upon receiving the court's letter, the client telephoned Respondent's office, and was told by staff members that Respondent would "take care" of the arrest warrant after the client paid his remaining fees. Motivated by this news, the client paid the remainder of the fee. On January 25, 1991, Respondent requested a new pre-trial conference date, which was rescheduled for April 5, 1991. During an April 8, 1991 telephone conversation, members of Respondent's staff informed the client of a postponement of the April 5 pre-trial conference. In fact, the conference had not been postponed. Respondent had again failed to appear. The court subsequently notified the client of his failure to appear, and reminded him of the outstanding warrant for his arrest, still existing as a result of the missed May 1990 pre-trial conference. When the client contacted Respondent's office, he was advised that Respondent was not aware of this information. The client met with a deputy prosecutor on April 19, 1991, and learned that there were two outstanding warrants for his arrest.

Respondent managed to have another pre-trial conference date set for May 15, 1991. The client thereafter filed a grievance with the Commission. Respondent then took renewed interest in his client's case, and rendered legal services to his client's satisfaction.

We find that Respondent violated Prof. Cond.R. 1.3, 1.4(a), and 1.4(b). We find further that Respondent violated Prof.Cond.R. 1.2(a) in that his lack of timely action frus-

trated the objectives of his client.[10]

## Count XIII.

 Respondent agreed to represent a couple in a bankruptcy action after they paid him $520.00 in filing costs and attorney fees. About one month later, in February 1991, Respondent filed a petition for bankruptcy on their behalf. The federal court scheduled hearing of the matter for April 2, 1991, and so informed Respondent. Respondent sought postponement of the hearing due to the fact that he had not prepared the schedules required to be filed prior to hearing. On March 29, 1991, the United States trustee filed a motion to dismiss due to Respondent's failure to file the necessary schedules and related documents, as required by applicable bankruptcy law. On April 4, 1991, the court sent out a notice of continuance of the April 2 hearing, and rescheduled it for May 2, 1991. Respondent failed to attend that hearing, leaving his clients to represent themselves. The trustee filed a second motion to dismiss on May 22, 1991, based on Respondent's failure to appear at the hearing. Respondent filed the required schedules on May 23, 1991. Nonetheless, the clients discharged Respondent that day due to their dissatisfaction with his services.

We find that Respondent's conduct in Count XIII violated Prof.Cond.R. 1.3.

## Sanction.

 Having found misconduct, we now must determine an appropriate disciplinary sanction. In this analysis, we look at several factors, including the nature of the misconduct, actual or potential injury flowing from the misconduct, the state of mind of the Respondent, the duty of this Court to preserve the integrity of the profession, the potential risk to the public in permitting Respondent to continue in the profession, and matters in mitigation, extenuation, or aggravation. *In re Cawley* (1992), Ind., 602 N.E.2d 1022; *In re Wells* (1991), Ind., 572 N.E.2d 1290.

Several facets of Respondent's misconduct illustrate its grave nature. He has demonstrated a continuing pattern of neglect affecting many clients. His actions presented such a continuing threat that we saw fit to exercise our duty to protect the public, the Bar, and the profession from his misdeeds by temporarily suspending him before this matter was even heard. Recurring instances of misconduct generally pose a greater threat than do isolated instances, and tend to indicate a situation where the misconduct is a product of more than mere oversight, inattention, or unavoidable external circumstances.[11] We therefore here attribute a significant degree of culpability to Respondent's repeated acts of neglect. We also note that the very nature of Respondent's misconduct, that being neglect of cases, threatens significant harm to clients in the form of expired causes of action, unnecessary delay, and the burden of needless anxiety.

The hearing officer found several factors in mitigation. Among them was the fact that during the time in question, Respondent suffered from "obstructive sleep apnea" brought on by a nasal obstruction. Although it appears that the physical malady which plagued Respondent was very real, we are nonetheless hesitant to attribute to it significant weight as a mitigating factor, especially in light of the parties' agreement that the affliction did not impair his ability to distinguish

---

**10.** Prof.Cond.R. 1.2(a) provides:

A lawyer shall abide by a client's decisions concerning the objectives of representation ... and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

**11.** In this regard, we note that the American Bar Association's *Standards for Imposing Lawyer Sanctions* provide a comprehensive model for assessing appropriate disciplinary sanctions. In its analysis of lawyer misconduct, the *Standards* look at the lawyers' mental states, and attribute varying degrees of culpability based on the specific mental state found. Thus, mere negligent conduct is seen as less culpable than knowing misconduct, which is in turn less culpable than intent to achieve a particular result. *See* American Bar Association *Standards for Imposing Lawyer Discipline, Theoretical Framework; In re Klagiss* (1994), Ind., 635 N.E.2d 163, 165.

right from wrong or to make appropriate judgments.

As we stated above, we view Respondent's misconduct as severe, and thus believe a correspondingly strenuous sanction should be imposed. The American Bar Association's *Standards for Imposing Lawyer Sanctions* provide that where a lawyer engages in a pattern of neglect and causes injury or potential injury to a client, suspension is generally appropriate. ABA *Standards for Imposing Lawyer Sanctions*, Standard 4.42. Given the extreme repetitive nature of Respondent's misconduct, and its otherwise severe nature, a lengthy period of suspension is warranted.

It is, therefore, ordered that Respondent William Drozda be suspended for a period of not less than three years, with credit for the period during which his license has already been suspended. Reinstatement shall be subject to the provisions of Admis.Disc.R. 23(4).

Costs of this proceeding are assessed against Respondent.