**In the Matter of Charlotte WEYBRIGHT.**

No. 02S00–9410–DI–958.

Supreme Court of Indiana.

Nov. 3, 1995.

No appearance for Respondent.

Donald R. Lundberg, Executive Secretary, Robert C. Shook, Staff Attorney, Indianapolis, for Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

### PER CURIAM.

■ The Disciplinary Commission's eleven-count disciplinary complaint against attorney Charlotte Weybright now comes before us for final resolution following submission of the hearing officer's findings of fact and conclusions of law. Respondent Weybright has not appeared at any portion of the proceedings in this matter. Neither the Commission nor the respondent have petitioned this Court for review of the hearing officer's findings. That being the case, we accept and adopt the tendered findings, but reserve the right to reach a final determination as to misconduct and sanction. *In re Stover–Pock* (1992), Ind., 604 N.E.2d 606.

■ This Court has disciplinary jurisdiction of this matter by virtue of the respondent's admission to this state's Bar in 1988. Under Count II,[1] we now find that the respondent met with a client on August 25, 1993. At that meeting, the client paid the respondent $375 to secure her representation regarding a visitation issue. After receiving some paperwork from the client's previous counsel regarding the case, the respondent took no further action on the file. The client's repeated attempts to contact the respondent went unheeded. He never recovered any portion of his retainer.

Under Count III, we now find that a client seeking to adopt his stepchild met with the respondent in February, 1993. He paid her $260 as a retainer to begin adoption proceedings, but the respondent never did. The client attempted to contact the respondent

some forty or fifty times during the succeeding months, to no avail. His retainer was never refunded.

In Count IV, we now find that the respondent consented to represent a client in seeking custody of the client's children in early 1993 upon agreeing to a fee of $750. After an initial consultation, the client paid the respondent $75 and made two subsequent payments of $340 and $100, respectively. The respondent entered her appearance in the action upon payment of one half of the fee, as agreed. Thereafter, she took no other action. The client's subsequent attempts to reach the respondent met with no success. He never received a refund of the fees he had paid.

Under Count V, we now find that on September 2, 1993, a client paid the respondent one-half of an agreed fee of $300, along with $55 for filing, upon the respondent's agreement to represent him in a marriage dissolution. On September 22, 1993, the respondent filed the action. The client paid an additional $100 on January 17, 1994, and, later, he met with the respondent to discuss a settlement proposal. He had no more contact with the respondent following the meeting, with the exception of a letter from her stating that she was moving to New Haven, Indiana. He was later unable to contact the respondent and never recovered any of the money he had paid to her.

As to Count VI, we now find that after noticing an advertisement for the respondent's services in a newspaper, a client retained her on October 1, 1993 to represent him in a dissolution action which had been filed. On that date, be paid her $150 towards an agreed fee of $750. On October 26, 1993, he paid to her an additional $500. She entered her appearance on November 2, 1993, and appeared with him at a provisional hearing on November 5. Final hearing was set for December 7, 1993, which the respondent managed to have reset to February 18, 1994. She failed to appear at the hearing and her client was left to represent himself. On February 21, 1994, the respondent posted

---

1. At hearing of this matter, the Commission did not present evidence as to Count I of the verified complaint.

a letter to her client informing him that she would be withdrawing from his case. She formally withdrew as counsel the next month. The client never received any refund of monies he had paid to her.

Under Count VII, we now find that a client retained the respondent to represent her in an appeal of termination of parental rights. In November, 1992, the client met with the respondent and delivered to her a case file. The next day, the client paid $300 as a retainer fee. On February 23, 1993, the respondent entered her appearance in the appeal. Over a subsequent period, the client paid to the respondent additional sums totaling $2,332 as further retainer and for a transcript. The respondent secured numerous extensions of time between September, 1993 and January, 1994 during which to file the record of proceedings in the case. The Court of Appeals finally dismissed the case after the respondent missed the final deadline of January 11, 1994. She never informed her client of the dismissal, and instead told her that the appeal papers were "on the judge's desk" and that a ruling could take significant time to materialize. On January 3, 1994, the client received a letter from the respondent stating that she should retain another lawyer. The client never recovered any of the funds she had paid to the respondent.

In Count VIII, we now find that a client retained the respondent to represent him in a support modification matter in September, 1993. The client paid a $225 retainer. The respondent appeared with him at a hearing on September 21, 1993, and later filed a petition on his behalf. Thereafter, the client was unable to contact or to locate the respondent. He was not informed by the respondent that hearings had been scheduled for January 7 and February 18, 1994. He thus failed to appear and later learned from his son that a warrant might be issued for his arrest due to his absence. He contacted the court to avoid issuance of the warrant, and later hired successor counsel. He never received a refund of the retainer he paid.

Under Count IX, we now find that a client retained the respondent to represent him in an uncontested dissolution, paying her a $300 retainer. Although the respondent thereafter filed a petition for dissolution, she failed

to further communicate with the client or return his repeated telephone calls. He eventually hired another attorney to complete the action and never recovered from the respondent the money he had paid to her.

Pursuant to Count X, we now find that the respondent represented a client in a dissolution action in October, 1993. The matter was scheduled for a contested hearing before a newly-appointed special judge on December 9, 1993. All parties and counsel appeared at the hearing, after which the special judge directed the respondent to prepare a final decree for entry by the court. The respondent failed to prepare the entry as directed, despite being reminded to do so by the judge. Eventually, the judge set a show cause hearing for March 2, 1994, at which time opposing counsel was directed to prepare the decree. Because of the delay occasioned by the respondent's inaction, her client was assessed an additional $420 in fees.

We now find in Count XI that the respondent was retained to appeal an adverse child custody ruling in May, 1993. Although she quoted a fee of $1,500 to her client for the representation, the client ultimately paid to the respondent a total of approximately $2,700. On September 8, 1993, the respondent filed the appeal. Between September and December, 1993, she obtained numerous extensions of time within which to file the record. The Court of Appeals dismissed the appeal on December 21, 1993. The respondent then missed a pre-arranged meeting with her client, scheduled to occur in her office. The client thereafter was unable to contact the respondent, who never informed her of the appeal's dismissal. The client never recovered the fees he paid to the respondent.

We find that, by the conduct recounted above, the respondent violated Rule 1.3 of the *Rules of Professional Conduct for Attorneys at Law* by failing to act with reasonable diligence and promptness in representing her clients. She violated Ind.Professional Conduct Rule 1.4 by failing to keep her clients reasonably informed about the status of various matters, by failing to promptly comply with their reasonable requests for informa-

tion, and by failing to explain matters to the extent reasonably necessary to permit her clients to make informed decisions regarding their representation. By failing to take steps reasonably practical to protect her clients' interests, the respondent violated Prof. Cond.R. 1.16(d). In Count VII, she violated Prof.Cond.R. 8.4(c) by engaging in conduct involving dishonesty, fraud, deceit and misrepresentation when she informed a client that an appeal had been filed when in fact it had not. In Count X, she violated Prof. Cond.R. 3.4(c) by knowingly disobeying an obligation of a tribunal by failing to file a proposed final dissolution decree after having been directed by the court to do so. In Count XI, she violated Prof.Cond.R. 1.5(a) by charging her client an unreasonable fee.

Having found misconduct, we now undertake an assessment of an appropriate disciplinary sanction. In so doing, we examine the nature of the misconduct, the respondent's state of mind, actual or potential injury caused by the misconduct, the duty of this Court to preserve the integrity of the profession, and factors in aggravation and mitigation. *In re Frosch* (1992), Ind., 597 N.E.2d 310; *In re Clanin* (1993), Ind., 619 N.E.2d 269. The respondent presents an alarming pattern of total abandonment of her clients' cases. It appears that she simply walked away from law practice without any consideration of the effect that spontaneous act would have on her unsuspecting clients. Aside from a few cursory letters advising of a new address or the need to procure new counsel, the respondent took absolutely no steps to protect the interests of her clients upon her apparent cessation of practice. Our findings reveal the monetary losses clients sustained as a result of the respondent's actions. What they do not reveal is the needless anxiety, legal harm, and great inconvenience occasioned by her consistent neglect of clients' legal matters. Finally, acts such as those occurring here greatly damage the perception of the legal profession as a whole and tarnish an image of professionalism and dedication a majority of practitioners strive to foster and uphold. We are therefore convinced that a lengthy period of suspension is warranted. That sanction comports with that suggested by the American Bar Association in situations where a lawyer "engages in a pattern of neglect and causes injury or potential injury to a client" and conforms with that imposed by this Court in other cases involving similar patterns of misconduct. *See* ABA *Standards for Imposing Lawyer Sanctions*, Standard 4.42; *In re Drozda* (1995), Ind., 653 N.E.2d 991 (three year suspension for thirteen counts of neglect of clients' cases).

It is, therefore, ordered that the respondent, Charlotte Weybright, is hereby suspended for a period of not less than three (3) years, beginning December 8, 1995, at the conclusion of which she shall be eligible for reinstatement provided she can meet the criteria set forth in Ind. Admission and Discipline Rule 23, Section 4.

Costs of this proceeding are assessed against the respondent.