**In the Matter of Frank B. HARSHEY.**

**No. 49S00–9904–DI–261.**

Supreme Court of Indiana.

Jan. 5, 2001.

Frank B. Harshey, pro se.

Donald R. Lundberg, Executive Secretary, Dennis K. McKinney, Staff Attorney, Indianapolis, IN, for the Indiana Supreme Court Disciplinary Commission.

## PER CURIAM

While prosecuting a lawsuit on behalf of a client, lawyer Frank B. Harshey intentionally caused the acceptance of a settlement offer that his client had earlier instructed him to reject. Because of this violation of the *Rules of Professional Conduct for Attorneys at Law*, we find today that Harshey, the respondent in this attorney disciplinary matter, should be publicly reprimanded.

This case formally began on April 23, 1999, when the Indiana Supreme Court Disciplinary Commission filed a *Verified Complaint for Disciplinary Action* against the respondent, charging him with violation of two provisions of the *Rules of Professional Conduct*. The parties thereafter agreed upon a resolution of the pending charges, which is now before us for approval in the form of a *Statement of Circumstances and Conditional Agreement for Discipline*, pursuant to Ind. Admission and Discipline Rule 23, Section 11(c). Our jurisdiction in this matter derives from the respondent's admission to the bar of this state on October 12, 1984. We find the undisputed facts, as agreed to by the parties, are as follow:

In 1991 the respondent represented a plaintiff corporation in a lawsuit it brought against a defendant corporation. The plaintiff corporation's president (hereinafter the "president") had hired the respondent for the representation and spoke for the plaintiff corporation. The respondent's contingency fee agreement provided that he would receive a percentage of any recovery.

In 1996, the president's wife filed for dissolution of marriage. The respondent did not appear as attorney for the president or his wife in the dissolution proceeding. On November 17, 1997, the trial court hearing the dissolution entered a dissolution decree providing that the president would retain the plaintiff corporation as his business, but that the wife would receive 45% of the net proceeds of the still-pending corporate litigation. The decree also provided that the attorneys for the president and wife were appointed as commissioners for the sole purpose of selling the couple's real estate.

In November of 1997, the defendant corporation offered to settle the corporate litigation by paying $125,000. The offer, if not accepted, was to expire in mid-January 1998. The case at that time was set for trial on February 17, 1998. The respondent advised the president to accept the settlement offer, but the president instructed the respondent to refuse it.

On January 12, 1998, without having rejected the offer as previously instructed by the president, the respondent telephoned the judge who presided over the president's dissolution action and informed him of the settlement offer and that a response was needed by January 16, 1998. The judge set an emergency hearing regarding the settlement offer for January 16, 1998, and notified the attorney for the president's wife. The president's wife subpoenaed the respondent to testify about the offer. On January 14, 1998, the president spoke to the respondent by telephone and instructed him to not appear at the emergency hearing in the dissolution matter. The respondent told the president that, being under subpoena, he was required to appear, and further advised the president that he was now representing the commissioners in the dissolution matter and that only they or the judge could fire him.

On January 15, 1998, the respondent met, in the chambers of the judge handling the dissolution, with the president's dissolution attorney, the wife's attorney and the judge to discuss the settlement offer. The respondent asked the judge to authorize him to accept the settlement offer, pending final approval at the next day's hearing. The respondent asked for this authorization because he was concerned that the president might somehow undermine the respondent's attempt to settle the corporate litigation. The judge issued an emer-

gency order authorizing the respondent to notify the defendant corporation's attorney that the settlement offer would be accepted.

The president moved to continue the hearing in the dissolution case on the corporate settlement offer, but the court denied the motion, and conducted the hearing without the president being present. During the hearing, the respondent testified about the settlement in the corporate litigation and gave his opinion as to its reasonableness. The judge in the dissolution case ordered the commissioners to accept the settlement offer. Although the president objected to the settlement of the corporate litigation as accepted by the dissolution commissioners, the judge hearing the corporate litigation approved the settlement.

█ Indiana Professional Conduct Rule 1.2(a) requires lawyers to abide by their clients' decisions concerning the objectives of representation, including whether to accept an offer of settlement in the matter, and to consult with them about the means by which such objectives are to be pursued. Despite the president's clearly expressed wish that the settlement offer in the corporate litigation be refused, the respondent unilaterally set into motion a chain of events which resulted in the settlement offer being accepted. As such, he violated Prof.Cond.R. 1.2(a).[1]

█ Professional Conduct Rule 1.6(a) generally prohibits lawyers from revealing information relating to representation of a

client unless the client consents after consultation.[2] By informing the court handling the president's dissolution case of the pendency of the settlement offer in the corporate litigation, the respondent revealed information relating to his representation of the plaintiff corporation. The respondent failed to consult with his client, the plaintiff corporation, prior to revelation of that information and failed to obtain the client's consent prior to disclosing the fact of the settlement offer. Accordingly, we find that he violated Prof.Cond.R. 1.6(a).

█ Having found misconduct, we must determine if the public reprimand agreed to by the parties is an appropriate sanction. Factors we consider in this assessment include the nature of the misconduct, the duty violated, the lawyer's mental state, the actual or potential harm caused by the misconduct, the duty of this Court to preserve the integrity of the profession, and the potential risk to the public in permitting the respondent to continue in the profession. *Matter of Drozda*, 653 N.E.2d 991 (Ind.1995); *Matter of Cawley*, 602 N.E.2d 1022 (Ind.1992).

The respondent simply ignored his client's clear wishes, as expressed to him by the president, with regard to whether to accept the settlement offer in the corporate litigation, and instead imposed his contrary will. By so doing, he ceased serving as an advocate for his client and instead became an adversary, one who disclosed confidential information about the representation in order to achieve his goal

**1.** Professional Conduct Rule 1.2(a) provides:

A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter....

**2.** Professional Conduct Rule 1.6 provides:

(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized

in order to carry out the representation, and except as stated in paragraph (b).

(b) A lawyer may reveal such information to the extent the lawyer believes necessary;

(1) to prevent the client from committing any criminal act; or

(2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyers' representation of the client ...

of obtaining a quick recovery and its attendant legal fee.

This Court has imposed public reprimands for roughly similar violations of the *Rules of Professional Conduct*. In *Matter of Mullins*, 649 N.E.2d 1024 (Ind.1995), a lawyer sought to have herself appointed as the personal guardian of a person in a persistent vegetative state, and then, without consent, released personal medical information about the person to the press. In *Matter of Bender*, 704 N.E.2d 115 (Ind. 1998), a lawyer pursued litigation on behalf of an individual he named as co-plaintiff even after that person clearly stated that she did not wish to be represented by the lawyer. For that, along with an attendant conflict of interest, we publicly admonished the lawyer.

We also consider aggravating and mitigating circumstances. *Matter of Christoff and Holmes*, 690 N.E.2d 1135 (Ind.1997); *Matter of Darling*, 685 N.E.2d 1066 (Ind. 1997). In purported mitigation, the parties in this case note that, although the client never authorized respondent to reveal the proposed settlement or the amount offered therein, the client himself had communicated the existence of the offer and its general amount to others before the respondent divulged the information to the judge.

Based upon consideration of the foregoing factors, we find that the proposed sanction should be approved, but only because of our strong inclination to support agreed resolutions. In view of the respondent's knowing breach of his fiduciary obligation to this client, had this case been litigated, the sanction may well have been more severe.

It is, therefore, ordered that the respondent, Frank B. Harshey, is hereby reprimanded and admonished for his misconduct.

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the United States District Courts in this state, and the clerks of the United States Bankruptcy Courts in this state with the last known address of respondent as reflected in the records of the Clerk.

Costs are assessed against respondent.

SULLIVAN, BOEHM, and RUCKER, JJ., concur.

SHEPARD, Chief Justice, dissenting, joined by Justice DICKSON:

Mr. Harshey's stunning treatment of his client is remarkably simple to describe.

After the client decided to turn down the defendant corporation's offer of settlement, Harshey decided not to act on the client's decision and set about finding some way to make the client accept it anyway.

He started off with an *ex parte* communication to the judge who had presided in the client's divorce, a venue in which Harshey had no status at all. In the course of this communication, he violated his duty to preserve the confidences of his client by revealing the status of the settlement negotiations.

When the client got wind of what Harshey was up to and asked him to stop, Harshey lied to the client, claiming he was now representing the lawyers who had litigated the divorce and could be fired only by them.

Fearful that his client might find a way to stop him, Harshey decided to meet with the dissolution judge and the dissolution lawyers a day in advance of the scheduled court hearing to ask for permission to inform the defendant corporation that its settlement would be accepted. In effect, he assured that even if the client showed up at the hearing to stand on his rights, it would be too late. It *was* too late.

The client who wanted to go to trial— and whose trial was just a few weeks off— never got his day in court. He was thwarted by the active and willful effort of

his lawyer, who refused the client's proper instructions, breached his confidences, lied to him, and *ex parte'd* the judge.

Our disciplinary system should not treat such behavior as a matter for mere reprimand. '