**Gary MORRISON, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 49A04–9109–CR–308.

Court of Appeals of Indiana,
Fourth District.

March 4, 1993.

Robert W. Hammerle, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Gary Morrison was convicted by jury of Dealing in Cocaine,[1] a class A felony, Possession of Cocaine,[2] a class C felony, and Resisting Law Enforcement,[3] a class D felony.[4] While Morrison raises several issues pertaining to his dealing and possession convictions (but not sufficiency of the evidence), only one is dispositive: Did the trial court commit reversible error in not allowing Morrison, on cross-examination, to obtain the current address of the State's key witness? In accordance with our supreme court's recent decision in *Pigg v. State* (1992), Ind. 603 N.E.2d 154, we hold that it did, reverse Morrison's dealing and possession convictions, and remand for a new trial.

In addition, because Morrison's conviction for resisting law enforcement is still intact, we address two final issues: (1) did the trial court err in giving final instruction 12; and (2) did the trial court err when it refused to replay trial testimony and when it communicated with the jury in Morrison's absence. We hold that it did not and affirm.

Reversed and remanded in part, affirmed in part.

## FACTS

The evidence most favorable to the verdict shows that Ramon Arellano agreed to work as a confidential informant for the Indianapolis Police Department in ex-

---

1. Ind.Code 35–48–4–1.

2. I.C. 35–48–4–6.

3. I.C. 35–44–3–3.

4. The trial court did not sentence Morrison for possession. R. 115.

change for the police reducing Arellano's charge for cocaine dealing from an A to a C felony. Arellano contacted Detective-Sergeant Steven Swarm and informed him that Morrison was dealing in cocaine. Following this tip, Swarm arranged for Arellano to purchase a large quantity (a quarter "key" or nine ounces) of cocaine from Morrison. Arellano, wired with a transmitting device, went to Morrison's home on two separate occasions to discuss securing a large amount of cocaine; however, due to an apparent mechanical failure, the police were unable to receive the conversations taking place between Arellano and Morrison.

On August 11, 1989, Arellano called Swarm and informed him that Morrison had just called and stated that he had the cocaine and that they had arranged for a sale that evening. Arellano said that he was to meet Morrison at a Pizza Hut restaurant that evening at eleven o'clock. Swarm made arrangements for several undercover police to be present to observe the meeting and if a sale occurred, to make an arrest.

When Arellano arrived at the restaurant, Morrison and his wife were waiting in their car. Arellano got in the back seat of their car. Arellano testified that after he got in, Mrs. Morrison picked up a bag from her side of the dashboard, handed it to Arellano and told him that "this 'shit' is good." R. 225–26. Arellano looked inside the bag and saw a ziplock plastic bag full of white powder and small rocks. Arellano gave the bag back to Mrs. Morrison and worked out the price with Morrison. According to a prearranged plan, Arellano told Morrison that he did not have the money on him, but if Morrison would follow him to his house, they could finalize the sale. Morrison agreed.

As Arellano and Morrison left the parking lot, Arellano turned right, which was a signal to the police that Morrison had the cocaine. Several unmarked police cars started following Morrison. Officer Sandra Valentine–Storkman, who was driving a marked police vehicle, assisted the other officers and attempted to stop Morrison. When Morrison did not pull over, Officer Valentine–Storkman turned on her red lights. Morrison refused to stop and a high-speed chase ensued. Morrison was finally apprehended and arrested; however, the police could not find any drugs in Morrison's car. The police backtracked the chase route, and over an hour later, found a brown bag containing what turned out to be approximately eight (8) ounces of cocaine. Both Morrison and his wife were charged with possession of cocaine with intent to deliver and possession of cocaine. Morrison was additionally charged with resisting law enforcement. Following a trial by jury, Morrison was convicted on all three counts, with sentences to run concurrent for a total of thirty-eight (38) years.

## DECISION

### I.

■ Morrison argues, among other things, that the trial court denied him his right to cross-examination as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. At trial, Arellano was the State's key witness. During cross-examination of Arellano, counsel for Morrison attempted to ask Arellano about his current address. Before Arellano could answer, the State objected on relevancy grounds and also that withholding of Arellano's address was necessary for his personal safety. R. at 240. The trial court—without holding an *in camera* hearing on this matter—sustained the objection. Relying on our supreme court's decision in *Crull v. State* (1989), Ind., 540 N.E.2d 1195, Morrison maintains that it was reversible error for the trial court to restrict the cross-examination of the State's key witness as to his residence without first holding an *in camera* hearing to determine whether disclosure of such information would endanger the informant. *Brief of Appellant* at 24. The State concedes that *Crull* is particularly apposite to this case; however, the State argues that because Morrison failed to demonstrate actual prejudice flowing from the trial court's decision to restrict cross-examination, reversal is not required.

Our supreme court recently addressed this very issue in *Pigg v. State* (1992), Ind., 603 N.E.2d 154. In *Pigg*, the supreme court affirmed this court's conclusion in *Pigg v. State* (1992), Ind.App., 591 N.E.2d 582, that by not holding an *in camera* hearing to determine the necessity of withholding the witness's address, the trial court impermissibly restricted Pigg's right to cross-examination. In affirming, our supreme court first observed that "one of the fundamental rights of our criminal justice system granted by the United States Constitution and the Indiana Constitution is the right of a defendant to cross-examination." *Pigg v. State* (1992), Ind., 603 N.E.2d 154, 155 (citing *Sears v. State* (1972), 258 Ind. 561, 282 N.E.2d 807, 808). Noting that inquiry regarding a witness's address "is among the legitimate questions for cross examination," *id.* (citing *Smith v. Illinois* (1968), 390 U.S. 129, 131, 88 S.Ct. 748, 749–50, 19 L.Ed.2d 956), a unanimous court held that a criminal defendant is *presumptively* entitled to cross-examine the State's key witness concerning such matters. *Id.* at 157 (emphasis added). The supreme court further held that the proper procedure for a trial court faced with a relevancy objection to the disclosure of a witness' address is to hold an *in camera* hearing to determine if there is a rational reason for withholding such information. Where there has been no *in camera* hearing (as was the case here), the court stated that prejudice to the defendant will be *presumed. Id.* Thus, the State's argument that Morrison must prove actual prejudice fails as a matter of law. Therefore, we must reverse Morrison's dealing and possession convictions and remand for a new trial.[5]

## II.

■ Morrison claims that the trial court erred when it read to the jury Final Instruction No. 12. That instruction reads:

*You must first determine the guilt or innocence of the defendant,* and if you have reasonable doubt as to guilt of the crimes charged, then you should find the defendant not guilty.

However, if you find that the State has proven beyond reasonable doubt the material allegations of the charges against the defendant, then you should find the defendant guilty.... Furthermore, *your sole responsibility is to determine innocence or guilt herein,* and should there be a finding of guilty, sentencing responsibility is that of the judge.

R. 95 (emphasis added). Morrison then traces the time-honored requirement of proof of guilt beyond a reasonable doubt, and concludes that the instructions in this case impermissibly relieved the State of its burden of proof, and denied him his presumption of innocence. We note, however, that because Morrison failed to raise this objection at trial, it has been waived. Ind. R.Crim.P. 8(B); *Abercrombie v. State* (1985), Ind., 478 N.E.2d 1236, 1239 (defendant's objection to an instruction that stated in part that the jury "must first determine the guilt or innocence of the defendant" was waived where defendant failed to object at trial); *Taylor v. State* (1981), Ind., 420 N.E.2d 1231, 1234–35 (defendant's objection to jury instruction which charged jury with necessity of determining "guilt or innocence" was waived where defendant failed to object at trial).

We further note (and Morrison concedes) that our supreme court recently upheld an *identical* jury instruction against a similar attack in *Daniel v. State* (1991), Ind., 582 N.E.2d 364, 372–73. Undaunted, Morrison asserts that because appellant in *Daniel* "will be filing a petition for writ of certiorari to the United States Supreme Court on this issue," Morrison will continue to argue this issue "until the fat lady sings!" *Appellant's Brief* at 48. Morrison cites no

---

5. Morrison (correctly) does not claim that the trial court's error likewise justifies a reversal of his conviction for resisting. Had he done so, we would reject it as being outside the appropriate scope of *Pigg.* This is because in *Pigg,* what was crucial to the supreme court was the fact that the confidential informant was the only

witness to the controlled buys of cocaine. *See, Pigg,* 603 N.E.2d at 156–57. In comparison, Morrison's resisting conviction, while obliquely supported by Arellano's testimony, was supported largely by the testimony of three police officers who had participated in the chase.

authority for this argument, and we choose instead to follow the clear decision of our supreme court in affirming the validity of this jury instruction.[6]

### III.

Morrison argues that the trial court erred when it refused to replay certain portions of the trial testimony and when it communicated in writing with the jury outside of Morrison's presence. The record indicates that during deliberations, the jury sent to the court the following written question: "Exactly what location did Officer Valentine–Stockman actually (1) turn on her lights and (2) join pursuit." Supp.R. 2. The judge sent back the following written response: "The testimony of the State and the Defense is in conflict." *Id.* In addition, an affidavit submitted to this court and signed by the trial judge, the prosecutor and counsel for Mr. Morrison states that: "[a]ll the undersigned parties discussed off the record the above jury question at the time it was tendered by the jury and all parties agreed to the Court's response. There were no objections to the Court's response.... All parties intended to make a Court record, but inadvertently did not so do...." *Id.* From this record, it does not appear that Mr. Morrison was present during any of these discussions.

 Ind.Code 34–1–21–6 governs the situation where a jury, during deliberations, requests the court to replay trial testimony or to provide clarification on legal issues. That statute provides:

> After the jury have retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys.

I.C. 34–1–21–6. The statute does not, however, provide the jury *carte blanche* to elicit any information it so desires. The statute clearly states that the jury must either manifest disagreement over the testimony or request legal guidance before the court has a duty to furnish the jury with any additional information. *Grayson v. State* (1992), Ind.App., 593 N.E.2d 1200, 1206; *Brownlee v. State* (1990), Ind.App., 555 N.E.2d 505, 508. From our review of the record, we find no evidence that the jury disagreed over any of the trial testimony, or desired clarification of legal matters. The jury's note simply asked the court to make a factual determination regarding the location of Officer Valentine-Stockman. Morrison has failed to demonstrate from the record how this jury request invokes the requirements of I.C. 34–1–21–6.

 When, as in this case, I.C. 34–1–21–6 is inapplicable, the decision to replay testimony lies within the sound discretion of the trial court. *Grayson, supra* at 1206. We find no abuse of that discretion. It is the unique province of the jury to weigh trial testimony and to assess witness credibility. *Dean v. State* (1978), 177 Ind.App. 1, 377 N.E.2d 420, 421. Had the trial court complied with the jury's request and provided the factual determinations, it would have usurped the jury's role as fact finder. Thus, the trial court would have actually abused its discretion had it affirmatively responded to the jury's request.

 Morrison next argues that by communicating with the jury in the presence of only the prosecutor and Morrison's attorney, but not in the presence of Morrison himself, the trial judge violated Morrison's right to be present at every stage of the proceedings as provided by the Indiana Constitution art. 1, § 13. Generally, when the jury requests additional guidance from the court, the proper procedure is for the judge to notify the parties and give them an opportunity to be present in court before he communicates with the jury. *Brewer v. State* (1993), Ind., 605 N.E.2d 181 (1993); *Nichols v. State* (1992), Ind., 591 N.E.2d 134, 138; *Marsillett v. State*

---

**6.** We note that certiorari was denied in *Daniel v. Indiana* (1992), —— U.S. ——, 113 S.Ct. 116, 121 L.Ed.2d 72.

(1986), Ind., 495 N.E.2d 699, 709. When the judge does not follow this procedure, an inference of prejudice arises and this inference creates a rebuttable presumption that error has been committed. *Brewer, supra; Nichols, supra.*

■■■■■ While Morrison's question is an interesting one,[7] we need not decide whether the presence of a defendant's attorney sufficiently represents the interests of the defendant in this situation because, even if it does not, any error attributable to Morrison's absence was harmless. When the trial judge merely responds to a jury question by denying its request, any inference of prejudice is rebutted and the error is deemed harmless. *Brewer, supra; Nichols, supra.* Here, the trial judge's response was in effect a denial of their request; therefore, Morrison was not prejudiced by this communication with the jury.

Reversed and remanded in part, affirmed in part.

CONOVER and FRIEDLANDER, JJ., concur.

---

7. There is authority that a defendant has the right to personally be in court at every critical stage of proceedings, including communications between judge and jury. *See, Cape v. State* (1980), 272 Ind. 609, 400 N.E.2d 161; *McFarland v. State* (1979), 271 Ind. 105, 390 N.E.2d 989; *Harris v. State* (1967), 249 Ind. 681, 231 N.E.2d 800. A common refrain in these cases is that if this right can be waived, then the waiver must be given by the defendant, and not his attorney. *Cape, supra* at 163; *Harris, supra* at 804. From these decisions, it would be fair to say that the mere presence of defendant's attorney at these proceedings, by itself, does not satisfy the constitutional mandate of Ind. Const. art. 1, § 13.

But if this is the case, then I.C. 34–1–21–6 is unconstitutional. This is because, under the statute, the presence of or notice to a defendant's attorney alone during communications between judge and jury is sufficient to satisfy our constitution. Our supreme court has not resolved this inconsistency. In fact, in a recent case involving communications pursuant to I.C. 34–1–21–6, the court stated that "when a jury is to be re-instructed it should be done in the presence of or after notice to the parties *or their attorneys." Stanley v. State* (1987), Ind., 515 N.E.2d 1117, 1120 (emphasis added). It may be possible to construe I.C. 34–1–21–6 as permitting an attorney to show up in the place of the defendant but only after the defendant has personally waived his right to be present in court. But regardless of how this inconsistency is to be resolved, it poses us no problem in this case due to the harmless nature of the judge's communications with the jury.