NAJAM, Judge.
 

 STATEMENT OF THE CASE
 

 Charles Turnbow was charged with murder for fatally stabbing the victim following an evening in which Turnbow, his spouse, the victim and the victim’s brother had been drinking together. The jury found Turnbow guilty of Reckless Homicide,
 
 [1]
 
 a Class C felony. On appeal, Turnbow raises three issues for our review which we restate as:
 

 1. Whether the trial court erred when it prohibited Turnbow from cross-examining the victim’s brother concerning his address.
 

 2. Whether the evidence supported an instruction on the defense of voluntary intoxication.
 

 3. Whether the prosecutor committed misconduct during closing argument.
 

 We affirm.
 

 DISCUSSION AND DECISION
 

 Issue One: Cross-Examination Concerning Witness’s Address
 

 Turnbow first claims that the trial court erred when it granted the State’s pretrial motion in limine and precluded him from asking the victim’s brother his address on cross-examination. At the time of Turn-bow’s trial, the brother was in jail on charges of driving with a suspended license and failure to pay a fine. Turnbow asserts that under our supreme court’s decision in
 
 Pigg v. State
 
 (1992), Ind., 603 N.E.2d 154, he had an absolute, Sixth Amendment right to cross-examine the brother regarding his address. According to Turnbow, he is not required to demonstrate that he was prejudiced by the court’s ruling because “prejudice is presumed.” Brief of Appellant at 11. We disagree.
 

 We acknowledge, as did our supreme court in
 
 Pigg,
 
 that a defendant is “presumptively entitled to cross-examine a witness concerning such matters as the witness’s address.”
 
 Pigg,
 
 603 N.E.2d at 157;
 
 see Smith v. Illinois
 
 (1968), 390 U.S. 129, 131, 88 S.Ct. 748, 750, 19 L.Ed.2d 956, 959. However, Turn-bow reads the holding in
 
 Pigg
 
 too broadly. The right to cross-examine concerning the witness’s address is not absolute.
 
 Pigg,
 
 603 N.E.2d at 157. There may be good reason for the court to prevent questioning about the witness’s address, such as a reasonable fear that the witness will be placed in danger.
 
 Id.
 

 Here, while there is no danger to the victim’s brother from disclosure of his address, the inadmissibility of this evidence justifies the trial court’s limitation on Turn-bow’s right of cross-examination. The trial court held a pretrial hearing on the State’s
 
 *1328
 
 motion in limine to prohibit Turnbow from introducing evidence that the brother was in jail. During the hearing, Turnbow’s counsel argued that Turnbow had a right to cross-examine the brother “[a]s to imprisonments.” Record at 48. Later, during a hearing on Turnbow’s offer to prove conducted outside the presence of the jury, Turnbow’s counsel again disclosed his reason for seeking to question the brother concerning his address: “I believe that we have a right to inquire into his arrest_” Record at 417.
 

 The clear object of Turnbow’s questions concerning the brother’s address was to put before the jury the fact of the brother’s arrest and incarceration. In other words, Turnbow sought, through cross-examination of the witness, to elicit inadmissible evidence. The brother was incarcerated on charges which had not been reduced to convictions, and it is well established that evidence of a witness’s specific acts of misconduct which are not reduced to a conviction is not admissible for impeachment purposes.
 
 See, e.g., Hicks v. State
 
 (1989), Ind., 544 N.E.2d 500, 505;
 
 Trice v. State
 
 (1988), Ind., 519 N.E.2d 535, 537;
 
 Stonebreaker v. State
 
 (1987), Ind., 505 N.E.2d 55, 59. It is improper to permit cross-examination of a witness regarding pri- or bad acts if the import of such evidence is directed only to a general assessment of the credibility and character of the witness.
 
 Johnston v. State
 
 (1988), Ind., 517 N.E.2d 397, 401. The trial court does not abuse its discretion when it limits cross-examination under such circumstances.
 
 See Stonebreaker,
 
 505 N.E.2d at 59.
 

 Evidence of the brother’s arrest and presence in jail is inadmissible because it is directed only toward his credibility and character as a witness. Neither at trial nor on appeal has Turnbow demonstrated a legitimate purpose for this evidence which would render it admissible.
 
 [2]
 
 We agree with the trial court’s ruling that evidence otherwise inadmissible does not become admissible merely because the defendant has a Sixth Amendment right to question the witness concerning his address. Thus, Turnbow has not shown that the trial court abused its discretion in limiting his cross-examination of the victim’s brother. We find no error.
 

 Issue Two: Voluntary Intoxication Instruction
 

 Turnbow next asserts that the trial court erred when it refused his tendered instruction on the defense of voluntary intoxication. The test for establishing error in the trial court’s decision to give or refuse tendered instructions is (1) whether the instruction correctly states the law; (2) whether there was evidence in the record to support giving the instruction; and (3) whether the substance of the tendered instruction was covered by other instructions.
 
 Evans v. State
 
 (1991), Ind., 571 N.E.2d 1231, 1237.
 

 The basic assumption upon which the defense of voluntary intoxication rests is that the defendant’s intoxication was so severe that it rendered him incapable of forming the requisite criminal intent to commit a crime, yet not so severe as to render him
 
 *1329
 
 incapable of the conduct required to commit the crime.
 
 See Street v. State
 
 (1991), Ind., 567 N.E.2d 102, 104. However, voluntary intoxication is not a defense where the defendant’s conduct demonstrates an ability to devise a plan, operate equipment, instruct the behavior of others or carry out acts requiring physical skill.
 
 See Terry v. State
 
 (1984), Ind., 465 N.E.2d 1085, 1089.
 

 The evidence presented in this case did not support an instruction on the defense of voluntary intoxication. At trial, when questioned concerning the events immediately leading up to the stabbing, Turnbow was able to describe the location where the victim was sitting in his apartment, the victim’s exact words, how the victim tore off his shirt in anger, and even how a button flew off when the victim removed his shirt. After the victim had chased him and his wife to their doorstep, Turnbow recalled that (1) his wife was unable to find her key to open their apartment; (2) someone hit him; (3) he spun around; (4) the victim and his brother were on either side of him; (5) he pulled out his knife and “swung it” at the victim; and (6) the victim backed away. Turnbow testified that he then entered his apartment, locked the door, cleaned himself of blood, wrapped the knife in his wife’s purple nightshirt, and called the police.
 

 Further, Turnbow’s awareness of the events and the ramifications of his actions is disclosed by the fact that Turnbow hugged his wife and told her to call his mother because he “was probably goin’ to jail.” Record at 825. Turnbow also admitted that he provided a false statement to the police that night because he was scared.
 

 Accordingly, Turnbow’s ability to testify in detail'to the events which preceded and followed the stabbing demonstrates he was not so intoxicated that his actions were involuntary. Even though a test revealed that Turnbow’s blood alcohol content was nearly twice the legal limit, Tumbow’s actions and his recollection of the circumstances show that he was aware of what he did and the consequences of his actions. In fact, Turn-bow had the presence of mind to fabricate a story for the police to conceal his guilt. We conclude that the evidence was insufficient to warrant an instruction on the defense of voluntary intoxication. The trial court properly denied Tumbow’s request for such an instruction.
 

 Issue Three: Prosecutorial Misconduct
 

 Finally, Turnbow contends that the prosecutor committed misconduct by his remarks in rebuttal closing argument. The prosecutor’s argument was not recorded due to a failure of the recording equipment. However, in its order on a petition to settle the record, the trial court made the following finding concerning the substance of the prosecutor’s argument:
 

 The prosecutor, during the rebuttal phase of his final argument, said to the jury that if the jury believed that the victim herein deserved to die, that they should find the defendant not guilty. At that point, the defendant objected on the grounds that the prosecutor was appealing to the passions and prejudices and emotions of the jury, and was misstating the law, and that the test suggested by the prosecutor’s argument was not the correct test to determine guilt or innocence.... The Court denied the motions but cautioned the prosecutor to argue the facts and the law. The prosecutor then repeated his comment as above stated and very shortly concluded his argument.
 

 Record at 1041-42. Turnbow moved for a mistrial and asserted that the prosecutor’s argument requested that the jury convict him other than for his guilt. Thus, he reasons that he was prejudiced by the prosecutor’s remarks and is entitled to a new trial.
 

 To establish the right to a new trial based upon prosecutorial misconduct, the defendant must show (1) that the prosecutor’s actions constituted misconduct by reference to norms of professional conduct and (2) that the resulting prejudice placed him in a position of grave peril to which he should not have been subjected.
 
 Everroad v. State
 
 (1991), Ind., 571 N.E.2d 1240, 1244. Once misconduct is shown, whether the misconduct results in grave peril is determined by the probable persuasive effect of the misconduct, not by the degree of impropriety involved.
 
 Id.
 
 The probable persuasive effect of the prosecutor’s inappropriate actions is not determined by whether its absence conclusively would have resulted in an acquittal.
 
 Id.
 
 Rather, “reversal is required where the evi
 
 *1330
 
 dence is close and the trial court fails to alleviate the prejudicial effect [of the misconduct].”
 
 Id.
 
 Repeated instances of misconduct which evidence a deliberate attempt to prejudice the defendant may also require reversal, even absent a showing that grave peril resulted from an isolated instance of misconduct.
 
 Id.
 

 We agree with Tumbow that the part of the prosecutor’s rebuttal closing argument at issue here was ill-advised and inappropriate. It was potentially misleading to tell the jury that if it found that the victim deserved to die, then it should find Tumbow not guilty. The jury could have construed the remark to mean, as Tumbow contends, that the jury should determine his guilt based on whether the victim was innocent or blameless in the altercation, or because the victim was simply an evil person. Therefore, Tumbow maintains that the emphasis was improperly shifted from whether Tumbow was guilty to whether the victim was guilty or innocent. Considered in this light, the prosecutor’s argument misrepresents the law and constitutes misconduct.
 
 See
 
 IND.CODE § 35-41^b-l(a) (“A person may be convicted of an offense only if his guilt is proved beyond a reasonable doubt”);
 
 Maldonado v. State
 
 (1976), 265 Ind. 492, 500, 355 N.E.2d 843, 849 (“It is misconduct for a prosecutor to request a jury to convict a defendant for any reason other than his guilt”).
 

 On the other hand, the jury could have also interpreted the prosecutor’s comment to mean that if the victim’s conduct instilled in Turnbow a reasonable belief that force was necessary to prevent bodily injury to himself, then Turnbow was justified in his use of force and should be found not guilty. In other words, the prosecutor’s argument was an exaggerated allusion to Tumbow’s self-defense claim.
 

 While the prosecutor’s statement in this case may be construed as misconduct, it was susceptible to both permissible and impermissible interpretations. Accordingly, the probable impact of the prosecutor’s statement on the jury was minimal and does not provide adequate cause for reversal.
 
 See Day v. State
 
 (1990), Ind., 560 N.E.2d 641, 644 (prosecutor’s statement in closing argument not reversible error because it was susceptible to several interpretations and probable impact on jury was minimal). A prosecutor may also properly comment on the evidence presented to the jury and argue logical conclusions from that evidence.
 
 See Hale v. State
 
 (1989), Ind., 547 N.E.2d 240, 243. Here, the prosecutor’s rebuttal closing argument, in the context of the issues tried before the jury, could have been construed as a comment on Tumbow’s theory of self-defense. The victim’s conduct that evening in front of Tumbow’s apartment was as much at issue as Turnbow’s conduct in determining whether Tumbow could have entertained a reasonable belief that he was in danger of serious bodily injury.
 
 [3]
 

 We conclude that Tumbow was not placed in grave peril by the prosecutor’s remarks dining rebuttal closing argument. In context, the import of the prosecutor’s argument was not so certain that we can say its probable persuasive effect on the jury resulted in prejudice to Turnbow. Thus, the trial court properly denied Turnbow’s motion for a mistrial.
 

 The judgment is affirmed.
 

 ROBERTSON and GARRARD, JJ., concur.
 

 [1]
 

 . IND.CODE § 35-42-1-5.
 

 [2]
 

 . We acknowledge that under the rule in
 
 Pigg,
 
 when confronted with a relevancy objection to this line of questioning, the trial court should conduct an in camera hearing which enables the court to hear the proposed questions and answers of the witness and then render a meaningful ruling on the objection.
 
 See Pigg,
 
 603 N.E.2d at 157. The court's ruling is reviewed for an abuse of discretion, and the burden is on the defendant seeking to elicit such information to prove an abuse.
 
 Id.
 
 The information sought through cross-examination must be made known to the defendant so that he may show prejudice from the court's decision to prohibit cross-examination.
 
 Id.
 
 Prejudice to the defendant is presumed where no in camera hearing is held and there is no way for the court to decide rationally whether a reason exists why otherwise relevant information should not be divulged.
 
 Id.
 

 Here, while the trial court did not hold an in camera hearing on Tumbow's right to cross-examine the victim's brother concerning his address, prejudice to Turnbow cannot be presumed. We do not read
 
 Pigg
 
 to require an in camera hearing where, as here, there is no reasonable fear that the witness would be in danger.
 
 See id.
 
 Rather, the court must merely hear the information sought in order to make a meaningful decision.
 
 Id.
 
 The trial court twice heard argument on Tumbow’s right to pursue such questioning when it held a hearing on the State’s pretrial motion in limine and permitted Turnbow to make an offer to prove at trial. We conclude that the trial court satisfied the procedures mandated in
 
 Pigg
 
 and that Turnbow has failed to show an abuse of discretion.
 

 [3]
 

 . We also question whether Tumbow was actually prejudiced by the prosecutor’s remark.
 
 See Marsh v. State
 
 (1979), 271 Ind. 454, 457-58, 393 N.E.2d 757, 760 (prosecutor's suggestion that defendant had previously asserted insanity defense to avoid prosecution was not prejudicial; jury returned verdict of guilty of voluntary manslaughter on murder charge and verdict of not guilty by reason of insanity on charge of assault and battery with intent to kill). Turnbow was charged with murder which requires proof of the defendant's specific intent to kill the victim. The prosecutor’s comment in rebuttal closing argument emphasized the victim's culpability in the altercation in which Tumbow claimed that he was defending himself against attack from the victim. Thus, because the jury found Tumbow guilty of only reckless homicide, it can reasonably be inferred from the verdict that the jury believed the victim provoked Tumbow's conduct and then concluded that Tumbow had successfully negated the specific intent element of murder.