**Charles E. TAYLOR, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 52A04–9601–CR–2.

Court of Appeals of Indiana.

Feb. 25, 1997.

Opinion on Rehearing May 12, 1997.

Transfer Denied July 16, 1997.

Caroline B. Briggs, Flora, for Appellant–Defendant.

Pamela Carter, Attorney General, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Defendant-Appellant Charles E. Taylor (Taylor) appeals his conviction of conspiracy to commit dealing in marijuana, a Class D felony.[1]

We affirm.

1. Ind.Code 35–48–4–10(a)(2); 35–41–5–2.

## ISSUES

Taylor presents the following re-stated consolidated issues for our review:

1. Whether prosecutorial misconduct occurred during the closing argument.

2. Whether Taylor's constitutional rights were violated by the trial court's communications with the jury during deliberation.

3. Whether evidence was improperly excluded by the trial court.

4. Whether the trial court erred in allowing the information to be amended on the day of trial.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the verdict follow. At a downtown bar in Peru, prior to Taylor's arrest, Taylor was in communication with police informant (Walker) about the cost of marijuana. Taylor indicated that Walker could come to his residence when he needed more marijuana. Walker telephoned Taylor's residence on February 22, 1994, and set up an appointment with a woman who also lived there (Gilliland) to pick up marijuana later that afternoon. When Walker arrived he talked with Taylor in the front room about the marijuana. Taylor later indicated that Walker was to follow Gilliland into the bedroom. Gilliland then provided the marijuana and collected the money while Taylor watched. Walker left, and Gilliland gave the money to Taylor.

Taylor was charged with conspiracy to commit dealing in marijuana on May 26, 1994, arising from the February 22, 1994, transaction. The trial was held on May 9, 1995. After the jury was sworn in, Taylor moved to dismiss the conspiracy charge, alleging it was defective. Rather than dismissing the charge, the trial court ordered that the information be amended, over Taylor's objection. After deliberation, the jury found Taylor guilty of the offense charged. This appeal followed. Additional facts are provided below as necessary.

## DISCUSSION AND DECISION

### I. Prosecutorial Misconduct

■ First, Taylor challenges the verdict by alleging prosecutorial misconduct. In reviewing a claim of prosecutorial misconduct, we must go through a two part analysis. We must determine: (1) whether the prosecutor committed misconduct, and (2) whether the misconduct, given the circumstances, placed Taylor in a position of grave peril to which he should not have been subjected. *Turnbow v. State,* 637 N.E.2d 1329, 1333 (Ind.Ct.App. 1994), *trans. denied.*

The conduct at issue here is a comment that the prosecutor made in the closing argument. During the closing argument the prosecutor twice called the evidence "uncontroverted," to which Taylor's attorney objected and moved for a mistrial on the grounds that the comment impermissibly referred to Taylor's failure to testify. The trial court overruled both objections. (R. 788, 782).

■ "The Fifth Amendment privilege against compulsory self-incrimination is violated when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence." *Moore v. State,* 669 N.E.2d 733, 739 (Ind. 1996). However, "[t]he Indiana Supreme Court has indicated that if in its totality the prosecutor's comment is addressed to other evidence rather than the defendant's failure to testify, it is not grounds for reversal." *Channell v. State,* 658 N.E.2d 925, 932 (Ind. Ct.App.1995), *reh'g denied, trans. denied.*

■ When the challenged language is not a direct comment on the defendant's failure to testify, we must decide whether the comment amounts to a summary of the evidence, rather than an attempt to comment on the defendant's silence. We previously have held that statements made by the State as to the uncontradicted nature of the State's evidence do not violate a defendant's Fifth Amend-

ment rights. Comment on the lack of evidence by the defense concerning otherwise incriminating evidence against him is proper "as long as the State focuses on the absence of any evidence to contradict the State's evidence and not on the accused's failure to testify." *Martinez v. State,* 549 N.E.2d 1026, 1028 (Ind.1990); *Channell,* 658 N.E.2d at 932 (holding that arguments which focus on the uncontradicted nature of the State's case do not violate the defendant's right not to testify).

■ There were two comments made by the prosecutor which are at issue here. The two comments were: (1) "the evidence is uncontroverted, there's no evidence before you to the contrary . . .;" (2) "when they sit there on the couch, they then talk about the quarter-pound, according to testimony of Kicker [Walker], and there is nothing to the contrary whatsoever, that is uncontroverted. . . ." Although they need to be addressed separately, neither comment requires reversal in this case.

In his reply brief, Taylor argues that because he is the only one who could have controverted the testimony, the prosecutor's comment on the uncontroverted evidence is necessarily improper. The precedent given by Taylor to uphold this argument is the supreme court decision in *Dooley v. State,* 271 Ind. 404, 393 N.E.2d 154, 155 (1979).[2] There are several factors which distinguish this case from *Dooley.* In *Dooley,* the defendant did not testify and presented no evidence whatsoever. The prosecutor there said that the evidence was "uncontroverted in any way by other evidence." *Id.* 393 N.E.2d at 155. This is very similar to the prosecutor's first challenged comment in this case.[3] Although the trial court in *Dooley* reversed the case based on comments made by the prosecutor, it was not this comment but later ones which necessitated reversal. The first comment directly referred to the defendant's privilege not to testify, and the

---

2. The test relied on in *Dooley* is as follows: "unless it appears that there are witnesses other than the defendant who have denied or contradicted the evidence against him, any direct or indirect reference to the defendant's failure to testify has been strictly regarded as an impingement of his

constitutional and statutory rights not to testify." *Dooley,* 393 N.E.2d at 155.

3. The comment at issue here was: "the evidence is uncontroverted, there's no evidence before you to the contrary." R. 778.

second comment included: "nobody else got up and told you . . . ." *Dooley,* 393 N.E.2d at 155. Those two comments were much more direct than the ones at issue here, obviously referring to the lack of testimony rather than the lack of conflicting evidence.

The first comment made by the State here, that the evidence before the jury is uncontroverted, is clearly a comment on the evidence as a whole. It is general enough not to constitute an impermissible reference to Taylor's failure to testify.

■ The second comment made by the prosecutor requires further analysis. The prosecutor said that the evidence pertaining to the discussion in the front room before the sale was uncontroverted. Taylor argues that he is the only one who could have controverted the evidence presented against him as to this step in the process, because he and Walker were the only ones present in the room. He argues that saying it is uncontroverted, when he is the only other one who was there, is an impermissible comment on his failure to testify.

Again, Taylor relies on *Dooley* to support this proposition. However, that case is not about the inferences drawn from the impermissible comment in a specific fact situation, but focuses on the failure of the court to properly admonish the jury. 393 N.E.2d at 156. Taylor also cites *Rowley v. State,* 259 Ind. 209, 285 N.E.2d 646 (Ind.1972). In that case, the prosecutor's improper comment was much more direct that the one we are dealing with here. That case acknowledges that there is a unique factual situation, when "no one but appellant could have contradicted the government witnesses," which makes a comment on the lack of contradicting evidence inappropriate. *Rowley,* 285 N.E.2d at 649 (*quoting Desmond v. United States,* 345 F.2d 225, 226–227 (1st Cir.1965)).

In this case, Taylor is not the only person who could have contradicted the testimony given. Gilliland was there, although she may have momentarily left the room. Furthermore, the State discusses several different stages in the transaction: the conversation at the bar, the telephone call to set up the appointment, the conversation before the sale, and the exchange of cash for the marijuana, not just the conversation on the couch referred to by the prosecutor. Regardless of the factual circumstances, the comment here is focused on the evidence presented, and not on the defendant's silence.

■ It is necessary to note that the standard relied on by Taylor, for determining whether the prosecutor improperly referred to the defendant's failure to testify, has been recently modified. Taylor relies on the standard set forth in *Rowley* which is: "a comment made by a prosecuting attorney, directly or indirectly, *which is subject to interpretation* by a jury as a comment upon failure of a defendant to testify has been strictly regarded as an impingement on the substantial right of the defendant." 285 N.E.2d at 648 (quoting *Williams v. Wainwright,* 416 F.2d 1042, 1043 (5th Cir.1969)) (emphasis added). This test has been modified by *Moore* which uses the following standard: "The Fifth Amendment privilege against compulsory self-incrimination is violated when a prosecutor makes a statement *that is subject to reasonable interpretation* by a jury as an invitation to draw an adverse inference from a defendant's silence." 669 N.E.2d at 739 (Ind.1996) (emphasis added). This new test inserts a reasonableness measure that was not existent in the strict *Rowley* test. Although the comment here could have possibly been misconstrued by the jury, it is not reasonable that it would lead a jury to make adverse inferences. The totality of the comment addresses the evidence presented, not the evidence missing. The comment by the prosecutor was not improper and does not constitute prosecutorial misconduct.[4]

---

4. Because of persuasive precedents, even if the statements at issue were improper, it would still not be reversible error. In a 1994 supreme court case, the prosecutor made a blatant reference to defendant's choice to remain silent; however, the Court held that it did not rise to reversible error because the comment was not a direct reference to the defendant's decision not to testify and the prosecutor did not dwell on the matter. *Splunge v. State,* 641 N.E.2d 628, 630 (Ind. 1994). Here, not only was the comment not a direct reference to Taylor's silence, nor dwelled upon, it was also not nearly as blatant as the comment made by the prosecutor in *Splunge.*

## II. Jury Deliberations

The second issue raised by Taylor addresses events that took place during deliberations. After the jury began deliberating, the court received a message from the bailiff that the jury had a question for the court regarding the conspiracy charge. Although Taylor repeatedly requested that the jury's questions first be written down so that he could confer with his client before they were answered, the judge refused this request and brought the jury back to open court.

First, the jury asked about the difference between the three different charges and whether they must convict on an all or nothing basis. The judge replied that he could not discuss the differences between the charges and informed them that they could re-read the instructions for guidance. The judge then answered the second part of their question by saying that the court would sort out any duplicity in verdicts at the time of sentencing, and that they should look at each charge individually and determine whether the State has met its burden. The jury again asked for clarification, and the judge told them that they could enter a guilty or not guilty verdict on each of the counts independently. Then the jury asked if any of the charges weighed more heavily than the others because of the order of the instructions, to which the judge informed them that there was no priority. Next the jury asked if "deliver" is "a hard enough fact." After the judge expressed that he was not sure of the question, the prosecutor stated that "Deliver is not separately defined." (R. 852). Finally, the jury asked if the instructions were to be considered line by line or item by item. The judge stated that they need to be considered as a whole. He then clarified his earlier statement about the court sorting out duplicities by affirming that what the jury does is binding on the court, that the three charges are separate, and that they are to infer nothing else from what he said. (R. 850–854).

### a. Communication with the Judge

Taylor argues that the court erred in handling the jury's questions in this manner, claiming that the Court's responses weakened the State's burden of proof and violated his right to consult with counsel and have assistance of counsel. Part of this argument is that the judge's comments amounted to an additional or modified instruction.

■■■■ Great deference is given to the trial court's determination of whether or not to grant a mistrial because it is in the best position to evaluate the situation and its impact on the jury. Because the trial court is given this great deference, Taylor must demonstrate that the conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. *Lawson v. State,* 664 N.E.2d 773, 781 (Ind.Ct.App.1996), *trans. denied.*

The correct procedure for answering questions of law raised by the jury after deliberation has begun is set forth in Ind.Code 34–1–21–6:

> After the jury have retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys.

This is exactly the procedure which was followed in this case. The jury wanted to be informed about a point of law. The judge called them into open court where he answered their questions in the presence of the defendant and both attorneys.

■■■■ Given the position of the trial judge and the deference granted him, we will not challenge the method used for answering the jury's questions in this case. The judge received and answered the questions in open court before all parties, as required by statute. His answers did not go to the merits of the case but cleared up a potentially dangerous misunderstanding of the jury that their response must be of an all or nothing nature. The attorneys were present for the entire

*Id.* Therefore, following the precedent set forth in *Splunge,* the comment did not amount to reversible error.

transaction, and Taylor's objections were preserved in the record. Once the jury left to continue deliberations, the judge explained his decision to answer the questions as he did, relying on the fact that he had not given an *Allen* charge.[5] (R. 854). Under Ind.Code 34–1–21–6, the judge has a responsibility to clear up points of law when requested to do so by the jury. In *Kiner v. State*, 643 N.E.2d 950, 955 (Ind.Ct.App.1994), *reh'g denied*, this court stated that the trial court should respond to a jury's requests seeking clarification on legal issues, but should also use discretion in determining which ones should be answered.[6]

■ Two of the cases on which Taylor relies, strictly holding that no additional instructions or explanations can be given without re-reading the whole, deal only with a deadlocked jury and a variation of an *Allen* charge. *Crowdus v. State*, 431 N.E.2d 796 (Ind.1982); *Lewis v. State*, 424 N.E.2d 107 (Ind.1981). That is not the case here. The problem is not that the jury was deadlocked, but that they did not understand their task. This is a drastically different situation which requires the court to address the problem to avoid injustice.

The other case that Taylor relies on heavily is *Wallace v. State*, 426 N.E.2d 34 (Ind. 1981). Although it did not address an *Allen* charge, as the other two did, the situation is still distinguishable. In *Wallace*, after the jury had been deliberating, the bailiff informed the court that the jury wished to know the definition of "reasonable doubt" and "competency of witnesses." The court then submitted an additional instruction to the jury, in writing and without the consent of the parties, about competency of witnesses. 426 N.E.2d at 36. *Wallace* is different from this case in three distinct ways: (1) the communications here took place in open court with all parties present as directed in

the Indiana Code; (2) the communications that took place here did not amount to additional, modified or supplemental instructions; and (3) the communications here did not come close to addressing the merits of the case as they did in *Wallace*. The trial court judge committed no error in responding to the jury's questions as he did.

■ Even if the trial court judge should not have addressed the jury's questions as he did, the communications would only result in harmless error, not requiring reversal. Although it is true that special instructions are held to improperly emphasize any given instruction, a communication between the judge and jury is harmless error if it does not go to the merits of the case or the manner in which the merits are determined. *Faceson v. State*, 642 N.E.2d 985, 986–987 (Ind.Ct.App.1994) (citing *Stanley v. State*, 515 N.E.2d 1117 (Ind.1987) (holding that the trial court's response to jury that the jury could make a sentencing recommendation and that the jury could write its own verdict based on the instructions was harmless error); *Wallace* 426 N.E.2d 34 (holding instructions erroneously given were directly related to merits of the case)).

The bulk of the case law in this area deals with ex parte communications between the judge and jury after deliberation has begun. Throughout this case law, the common theme is that "in all circumstances the preferred method for communicating with the jury is on the record in open court." *Smith v. Convenience Store Distributing Company*, 583 N.E.2d 735, 738 (Ind.1992); *Alexander v. State*, 449 N.E.2d 1068, 1074 (Ind.1983).

In one such case the jury asked the court whether they could find for the defendant on one count and against on the other. Without consulting with the parties, or even informing them of the question, the court replied that they may render a different verdict on

---

5. The *Allen* charge is the common name for a supplemental charge given by a trial judge to an apparently deadlocked jury. *Lewis v. State*, 424 N.E.2d 107, 109 (Ind.1981) (citing *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896)).

6. *See also People v. Childs*, 159 Ill.2d 217, 201 Ill.Dec. 102, 636 N.E.2d 534, 539 (1994) (holding

that "the general rule is that the trial court has a duty to provide instruction to the jury where it has posed an explicit question or requested clarification on a point of law arising from facts about which there is doubt or confusion. This is true even though the jury was properly instructed originally").

both counts. *Alexander,* 449 N.E.2d at 1073. The ex parte communication with the jury was challenged on appeal. The State reasoned that it was better to set the jury straight as to their options than risk an unjust verdict; our supreme court agreed and held: "[W]e do not condone this conduct. However, we hold the State met its burden of showing the harmlessness of the communication between judge and jury outside the presence of the defendant." *Alexander,* 449 N.E.2d at 1074. Although the trial court judge's response to the jury's inquires in *Alexander* was more succinct than the response here, it was a similar response except for the fact that here the communication was in open court as required by statute.

Because of this precedent, we find that even if found to be inappropriate, the communication between the judge and jury was not reversible error. Taylor expresses concern that the jury received a subtle message that a guilty verdict was expected because of the judge's comments. This risk was alleviated by the trial court's clarification before the jury returned to finish deliberating, that he implied nothing other than that the jury was to decide guilty or not guilty on each charge.

### b. Communication with the Prosecutor

 We must also address the unsolicited response made by the prosecutor in front of the jury during deliberations [7] and the alleged nodding and smiling of the prosecutor. Taylor alleged that these errors required a mistrial, but the trial court judge overruled the motion. Improper communication with the jury during deliberation is not always reversible error, as explained in *Smith:*

> In instances where the jury is subject to improper communications during deliberations, prejudice is presumed. If, however, an explanation for the communication is given, and we are satisfied that no harm resulted, then the judgment will be allowed to stand.... In deciding whether the presumption of harm has been rebutted, we evaluate the nature of the communication

to the jury and the effect it might have had upon a fair determination.

*Smith,* 583 N.E.2d at 738; *Jewell v. State,* 624 N.E.2d 38, 42 (Ind.Ct.App.1993); *see also Kiner,* 643 N.E.2d at 957 ("We further note that our supreme court has held that the failure to inform the jury under the statute is not reversible error per se.").

 Relying on the record, it appears that the prosecutor's comment was not for the benefit of the jury, but to help the judge put the question into context. Although the jury overheard this statement, it did not address the question in a positive or negative way. The presumed prejudice was rebutted, and the error harmless. Additionally, the prosecutor claims that any head motions or nods were simply following the events taking place and were not intended to influence the jury. Again, the trial court is in the best position to determine whether a mistrial should be granted because of the unique perspective it has on the events at trial and their impact on the jury. *Lawson,* 664 N.E.2d at 781. Because of this great discretion we give the trial court, we find that the conduct during deliberations does not require a mistrial.

### c. Communication between the Jurors

 Taylor also challenges the verdict on the basis that: (1) the jury impermissibly communicated with the bailiff, and (2) the jury was impermissibly deliberating in open court. He bases the first claim on the fact that the bailiff knew that the jury's question concerned the conspiracy charge. The second claim is based on affidavits presented by Taylor stating that the jurors were moving around and talking when they were in open court. A jury is presumed to have followed the instructions of the court. *Lawson,* 664 N.E.2d at 777. The facts presented here do not support Taylor's allegation that there was some inappropriate communication between the jury and the bailiff. *See Lawson,* 664 N.E.2d at 776 (holding that the fact that alternate juror wrote and sent a note to the judge requesting tape and recorder on behalf of the deliberating jury does not support

---

**7.** When the judge did not understand the jury's question about the word "deliver," the prosecu-

tor offered the information that "deliver" is not defined in the statute.

claim that alternate juror participated in deliberations). Likewise the facts do not support the allegation that the jurors' actions in the court room amounted to allowing the parties to be present during deliberations. Taylor's claims on these issues are without merit.

### III. Admission of Evidence

The next issue raised by Taylor deals with the exclusion of evidence as to where Walker currently and previously lived. Taylor believes that this information is crucial to a meaningful cross-examination, and the exclusion of the evidence diminished Taylor's right of cross examination.

■■■ Rulings on evidentiary matters are within the discretion of the trial court judge. *Jones v. State*, 655 N.E.2d 49, 56–57 (Ind.1995). In determining admissibility of evidence, the reviewing court will only consider that evidence in favor of the trial court's ruling and unrefuted evidence in the defendant's favor. *Reaves v. State*, 586 N.E.2d 847, 857 (Ind.1992) (quoting *Russell v. State*, 460 N.E.2d 1252, 1254 (Ind.Ct.App. 1984)). A claim of error for admitting or excluding evidence cannot be brought unless a substantial right of the party is affected, and a specific and timely objection and offer of proof was made to preserve the error for review. Evid.R. 103(a); *Carter v. State*, 634 N.E.2d 830, 833 (Ind.Ct.App.1994).

■■■ Taylor has a constitutional right to a full, adequate and effective cross-examination, which is fundamental to a fair trial. *Robinson v. State*, 634 N.E.2d 1367, 1370 (Ind.Ct.App.1994) (citing *Andrews v. State*, 588 N.E.2d 1298, 1302, (Ind.Ct.App.1992), *reh'g denied* ). However, the trial court still has the discretion to control the conduct of cross-examination, and only a clear abuse of discretion warrants reversal. In order to effectively object to a restriction on cross-examination, a defendant must show he was prejudiced by the trial court's action. *Id.*

■■■ This standard has also been tailored for the present situation, when the defendant attempts to cross-examine the witness concerning his address.

[A] defendant is presumptively entitled to cross-examine a witness concerning such matters as the witness's address.... The right to cross-examine concerning the witness's address is not absolute. There may be good reason for the court to prevent questioning about the witness's addresses, such as a reasonable fear that the witness will be placed in danger.

*Turnbow*, 637 N.E.2d at 1331 (citing *Pigg v. State*, 603 N.E.2d 154, 157 (Ind.1992)).

■■■ When the defendant's attempt to cross-examine the state's key witness as to his residence is objected to on the grounds of relevancy and potential danger to the witness, several cases have made it clear that an *in camera* hearing is required to determine the admissibility of the evidence. *Pigg*, 603 N.E.2d at 157; *Morrison v. State*, 609 N.E.2d 1155, 1158 (Ind.Ct.App.1993); *Turnbow*, 637 N.E.2d at 1332. When there is no *in camera* hearing to determine if there is a rational reason for withholding such information, the prejudice to the defendant will be presumed. *Morrison*, 609 N.E.2d at 1158. However, this presumption is an exception to the general rule stated above, that the defendant must demonstrate that he was prejudiced by the trial court's abuse of discretion. This exception is only applicable if there was no *in camera* hearing. Because there was an *in camera* hearing determining the reason for withholding Walker's past and present addresses on cross-examination, the exception does not apply and Taylor must demonstrate how he was prejudiced by the exclusion of the addresses. Taylor has not meet this burden of demonstrating prejudice.

■■■ Instead, Taylor argues that the hearing held on the issue was not a meaningful *in camera* hearing to such an extent that it was as if no hearing was held. At two separate times during this trial the judge heard from both attorneys outside of the presence of the jury regarding the admissibility of the addresses; the first time the judge also heard from Walker on the issue. The issue to be determined by the judge was whether or not Walker would be put in danger by revealing his addresses, which has been held to be a valid basis for precluding testimony concerning a witness's address. *Pigg*, 603 N.E.2d at 157; *Johnson v. State*, 518 N.E.2d 1073, 1075 (Ind.1988) ("One limitation on the right to cross-examine a witness

occurs when disclosure of the information sought would endanger the physical safety of the witness or his family"); *Pierce v. State,* 640 N.E.2d 730, 733 (Ind.Ct.App.1994), *trans. denied* ("questions regarding a witness's address may be prohibited where there are legitimate concerns of prejudice, the witness's safety, or interference with ongoing investigations"); *Crull v. State,* 540 N.E.2d 1195, 1199 (Ind.1989) (threat to the witness must be actual and not a result of conjecture). There is evidence in the record that both sides were able to speak on the issue, although it may not have been to the extent desired by Taylor. Additionally, the judge held two different *in camera* hearings on the issue, one at an earlier point in the trial when the court discussed a motion in limine on the issue before the parties began presenting their evidence, and the second prior to the cross-examination of Walker. Therefore, there were two opportunities for the parties to discuss the issue with the court. There is also sufficient evidence in the record that could reasonably and legitimately lead the judge to find that Walker would be put in jeopardy by revealing his addresses. As stated above, the trial court has great discretion when determining the admission and exclusion of evidence, and we will not overrule its decision absent a clear abuse of discretion. *Reaves,* 586 N.E.2d at 857. There is no clear abuse of discretion evident from this hearing which would amount to a non-hearing as Taylor suggests. The hearing on the issue of the exclusion of Walker's address was sufficient and the court's decision to exclude is upheld.

Taylor cites *Crull* to support his proposition that the danger shown here by the State was not enough to preclude testimony regarding the addresses. 540 N.E.2d 1195. This case is easily distinguishable. In *Crull* the court found that the State had not sufficiently shown danger to the witness to allow him to conceal fundamental information about his address and work. *Id.* at 1199–1200. Here, the State was able to show reasonable danger to Walker, and the danger discussed was much greater and more specified than the danger to the witness in *Crull.* Furthermore, Taylor was still able to cross examine Walker before the jury about his work and the areas in which he lived and

worked. This was not the case in *Crull,* where the witness was not even able to give his employer or the state in which he lived. *Id.* at 1197. The issue of whether Taylor was denied an effective cross-examination is controlled by whether he had been given sufficient opportunity to place the witness in his proper setting, not whether or not the address was divulged. *Johnson,* 518 N.E.2d at 1075. Here, not only was there sufficient basis to exclude the evidence, but Taylor was able to create a vision of Walker's environment for the jury regardless of the exclusion.

 Taylor complains that the trial court relied on a statement which was inadmissable in making its determination. The court recognized some indication of danger to Walker from the evidence presented before the statement at issue was offered and addressed. (R. 485). The hearing then went on to the inadmissable statement and the nature of that statement. There was plenty of evidence presented at the two hearings that would support the court's ruling without considering the inadmissable statement. Erroneously admitted evidence will be considered harmless error when a guilty verdict is supported by overwhelming independent evidence. *Spires v. State,* 670 N.E.2d 1313, 1314–1315 (Ind.Ct.App.1996); *Hackney v. State,* 649 N.E.2d 690, 693 (Ind.Ct.App.1995), *trans. denied.* Because there is sufficient independent evidence to support the trial court's decision to exclude Walker's address from cross-examination, admission of the inappropriate evidence was harmless error and does not require reversal.

### IV. Amendment of the Information

 Finally, Taylor argues that the trial court erred in allowing the information to be amended the day of trial, after the jury had been sworn in. On the first day of trial, Taylor moved to dismiss the conspiracy charge because the information erroneously contained the mens rea knowingly. Taylor alleges that because of the incorrect mens rea he was not able to draft an elements instruction. After acknowledging that the information was incorrect, the court denied the motion to dismiss and allowed the State to amend the information. Taylor then moved for a severance of the conspiracy charge or a continuance; both were denied.

■ The purpose of an information is to guarantee certain protections to the criminally accused. First, the charging document must set forth the elements of the offense charged in order to apprise the defendant with reasonable certainty of the accusation against him. Second, the offense charged must be described with sufficient particularity to permit a defense of double jeopardy in the event of a subsequent prosecution. *Wine v. State,* 637 N.E.2d 1369, 1374 (Ind.App. 1994); *see also Griffin v. State,* 439 N.E.2d 160, 162 (Ind.1982).[8]

■ An indictment and information can be amended. Amendments are controlled by Indiana Code 35–34–1–5, which states:

(a) An indictment or information which charges the commission of an offense may not be dismissed but may be amended on motion by the prosecuting attorney at any time because of any immaterial defect, including:

. . .

(9) any other defect which does not prejudice the substantial rights of the defendant.

Ind.Code 35–34–1–5(a).

■ However, an information may not be amended to change the theory of the case or the identity of the offense charged; but, it may be amended at any time to cure a defect if the substantial rights of the defendant are not prejudiced. *Hart v. State,* 671 N.E.2d 420, 427 (Ind.Ct.App.1996); *Robertson v. State,* 650 N.E.2d 1177, 1181 (Ind.Ct.App. 1995), *reh'g denied; Taylor v. State,* 614 N.E.2d 944, 947 (Ind.Ct.App.1993), *trans. denied* ("an amendment is permissible only if it does not affect the availability of a defense or the applicability of evidence which existed under the original information"). The amendment here did not change the theory of the case, change the identity of offense charged, or cause prejudice to Taylor's substantial rights. Therefore, the amendment of the information in this case was not error.

The main factors focused on throughout Indiana case law when determining whether or not an amendment was improper are the availability of the defendant's defenses, the risk of double jeopardy, and the danger of misleading the defendant in preparation of trial. *See Robertson,* 650 N.E.2d at 1181 (holding that "[a] material variance, which requires reversal, must mislead the defendant in the preparation of his defense or subject him to the likelihood of another prosecution for the same offense"); *Hart,* 671 N.E.2d at 427 (holding that "[i]f a defense under the original information would be equally applicable to the information in one form as the other, then the amendment is one of form and not one of substance"); *Gordon v. State,* 645 N.E.2d 25, 27 (Ind.Ct. App.1995), *reh'g denied, trans. denied,* (holding that "[e]rrors in the information are fatal only if they mislead the defendant or fail to give him notice of the charge filed against him").

■ The charge in the information is listed as "conspiracy to commit dealing in marijuana." The information cites the correct statute provisions for dealing in marijuana and for conspiracy. Ind.Code 35–48–4–10(a)(2), 35–41–5–2. (R. 9). One cannot knowingly commit conspiracy; conspiracy requires "intent to commit the felony." Ind. Code 35–41–5–2(a). Although the information was incorrect, it was properly corrected. The information did make the crime charged clear, it merely misstated the intent. Therefore, Taylor had sufficient notice to prepare his defense. *See Gordon,* 645 N.E.2d at 27 (holding that "[b]ecause the informations specifically direct Gordon to the statutory offense in addition to describing the particular facts of this case, they are not deficient and could not have misled him of the charges against him"). The information clearly set out the event that the charge was based upon, so as to prevent double jeopardy. Additionally, Taylor does not allege that he was precluded from a viable defense by the amendment.

The error in the information was corrected by a proper amendment under Ind.Code 35–34–1–5. Taylor was not prejudiced by this, was at no risk of double jeopardy, and did

---

8. "The purpose of an information is to advise the defendant of the particular crime charged so that he can prepare his defense." *Wine,* 637 N.E.2d at 1375 (defendant failed to show that information gave him insufficient notice of charges or mislead him in any way).

not show the loss of a prospective defense. The trial court did not abuse its discretion in allowing the amendment on the day of the trial.

### CONCLUSION

Based on the forgoing, we find that: the prosecutor's statements during closing arguments did not amount to reversible misconduct; the trial court judge did not commit error in handling the jury's questions; there was a valid basis to exclude the address evidence; and the amendment to the information on the day of trial was proper.

Affirmed.

CHEZEM and ROBERTSON, JJ., concur.

### OPINION ON REHEARING

(May 12, 1997)

RILEY, Judge.

Defendant-Appellant Charles E. Taylor (Taylor) has petitioned for rehearing of our decision in *Taylor v. State*, 677 N.E.2d 56 (Ind.Ct.App.1997). We grant Taylor's petition for clarification on one issue, and we affirm our earlier decision.

Taylor asserts that our opinion is in error because of the inclusion in a footnote of a case which has been overruled as to the principle cited. *Taylor*, op. pg. 67 n.9, (citing *Wilson v. State*, 635 N.E.2d 1109 (Ind.Ct. App.1994), *rev'd*, 644 N.E.2d 555 (Ind.1995)). Our conclusion was not based on *Wilson*. Instead, our opinion was based on the trial court's discretion to allow the information to be amended pursuant to Indiana Code 35–34–1–5(a). *Taylor v. State*, op. pg. 67–68. We found that the amendment of the information did not change the theory of the case, change the identity of the offense charged, or prejudice Taylor's substantial rights. Taylor was not mislead by the information; he was not at risk of double jeopardy; and, he was not denied any possible defenses. Therefore, the trial court did not err in allowing the amendment of the information. *See Hart v. State*, 671 N.E.2d 420 (Ind.Ct.App.1996); *Gordon v. State*, 645 N.E.2d 25 (Ind.Ct.App. 1995), *reh'g denied, trans. denied; Robertson v. State*, 650 N.E.2d 1177 (Ind.Ct.App.1995), *reh'g denied; Taylor v. State*, 614 N.E.2d 944 (Ind.Ct.App.1993), *trans. denied.*

In discussing the issue, we included a citation to *Wilson v. State*, 635 N.E.2d 1109 (Ind.Ct.App.1994) in a footnote. *See Taylor*, opinion at 67, n. 9. *Wilson*, which has been overturned by our supreme court, was cited only for purposes of illustration. It did not form the basis for our decision. *See Wilson v. State*, 635 N.E.2d 1109 (Ind.Ct.App.1994).

We have instructed West Publishing Company to delete footnote 9 in our reported decision.

ROBERTSON, J., concurs.

CHEZEM, J., concurs in result.