## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 23 2019, 10:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ivan A. Arnaez
Arnaez Law Offices
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Thomas N. Ritchie,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 23, 2019

Court of Appeals Case No.
19A-CR-527

Appeal from the Gibson Circuit Court

The Honorable Jeffrey F. Meade, Judge

Trial Court Cause No.
26C01-1610-F4-974

**Bradford, Judge.**

# Case Summary

Thomas Ritchie was convicted of Level 4 felony burglary under a theory of accomplice liability. During trial, the State provided evidence that proved that Ritchie served as the "lookout" on the night of the burglary and drove the stolen contraband away from the scene of the crime. Ritchie raises numerous challenges to his conviction on appeal. We affirm.

# Facts and Procedural History

Shortly after 9:00 p.m. on September 26, 2016, Ritchie visited the home of Christy Apodaca, spending time in Apodaca's bedroom. While in Apodaca's bedroom, Ritchie continuously looked out a window towards the home of Apodaca's neighbor, Jared Smith, and talked through an "app" on his cellular phone that made it sound like he was "talking on a walkie-talkie." Tr. Vol. III pp. 153, 54. Apodaca heard a male voice coming from "the other end of the walkie-talkie app thing on his phone." Tr. Vol. III p. 155. At some point, Apodaca heard a horn honk outside in front of her home. She also heard the sound of the horn honking through Ritchie's phone "like it echoed through his phone." Tr. Vol. III p. 158. After Ritchie had been at her home for approximately ten to fifteen minutes, Apodaca heard her nephew, Bailey Payne, knocking on the door and "screaming" for her to open the door. Tr. Vol. III p. 159. Payne asked why there were two televisions in the backyard. Ritchie left after loading the televisions in his vehicle.

[3] When Smith returned to his home the next morning, he noticed that his back door was cracked open and the screen door was "off its hinges." Tr. Vol. III p. 73. Once inside, Smith discovered that two televisions were missing from his house. He also discovered that items that were scheduled to have been delivered to his front porch on September 26 were missing and the pull-down door to his attic had been opened.

[4] On October 14, 2016, the State charged Ritchie with Level 4 felony burglary and Level 6 felony theft. Ritchie was found guilty of both counts following a jury trial. On February 12, 2019, the trial court merged Ritchie's Level 6 felony theft conviction into the Level 4 burglary conviction and sentenced him to a term of nine years.

# Discussion and Decision

[5] Ritchie raises numerous contentions on appeal, which we restate as whether (1) the trial court abused its discretion in limiting his cross-examination of Smith, (2) the evidence is sufficient to sustain his conviction for burglary, (3) the trial court abused its discretion in admitting certain evidence, (4) the trial court erred by failing to declare a mistrial after an unidentified audience member made an unsolicited statement about a witness, (5) the prosecutor committed misconduct, and (6) the cumulative effect of the claimed errors made reversal necessary.

# I. Limitation of Cross-Examination

While a defendant is "presumptively entitled to cross-examine a witness concerning such matters as the witness's address," … "[t]he right to cross-examine concerning a witness's address is not absolute." *Turnbow v. State*, 637 N.E.2d 1329, 1331 (Ind. Ct. App. 1994) (internal quotation omitted). For example, because it is improper to permit cross-examination of a witness regarding prior bad acts if the import of such evidence is directed only to a general assessment of the credibility and character of the witness, the trial court does not abuse its discretion when it limits cross-examination aimed at attacking the character or credibility of a witness. *Id.* at 1332.

The State sought to exclude questions during cross-examination relating to Smith's address and incarceration at the time of Ritchie's trial, arguing that by asking such questions, Ritchie was merely attempting to impeach Smith's credibility. The Indiana Supreme Court has held that for the purpose of impeaching the credibility of a witness, only those convictions for crimes involving dishonesty or false statements—treason, murder, rape, arson, burglary, robbery, kidnapping, forgery, and willful and corrupt perjury—shall be admissible. *Ashton v. Anderson*, 258 Ind. 51, 63, 279 N.E.2d 210, 216–17 (1975). Ritchie acknowledged during trial that Smith "hasn't done any of the *Ashtons*." Tr. Vol. III p. 48. Noting that it was "not convinced there's a legitimate purpose, other than the – something going toward credibility and character," the trial court granted the State's motion in limine regarding questioning as to Smith's current address. Tr. Vol. III p. 48.

[8]     Ritchie has failed to offer a legitimate purpose for questioning Smith about his address, *i.e.*, his incarceration. Instead, as the trial court noted, Ritchie merely sought to undermine Smith's credibility and character as a witness. Without specifying what Smith's alleged crimes were, Ritchie acknowledged that the crimes were not *Ashton* crimes involving dishonesty or false statements. Thus, the evidence was inadmissible. *See Turnbow*, 637 N.E.2d at 1332 (concluding that evidence of incarceration directed only toward credibility and character is inadmissible and such evidence does not become admissible merely because the defendant has a Sixth Amendment right to question the witness concerning his address). The trial court did not abuse its discretion in this regard.

[9]     Furthermore, to the extent that Ritchie argues that he should have been able to question Smith about his address for the purpose of proving that Smith was biased against him, Ritchie has failed to demonstrate that the trial court's ruling left him unable to cross-examine Smith about potential bias. Had he chosen to do so, Ritchie could have inquired into bias through other less-intrusive means without implicating Smith's irrelevant criminal history. Ritchie, however, did not do so.

## II. Sufficiency of the Evidence

[10]    Our standard of review for challenges to the sufficiency of the evidence is well-settled. *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015).

> We do not reweigh evidence or reassess the credibility of witnesses when reviewing a conviction for the sufficiency of the evidence. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). We

view all evidence and reasonable inferences drawn therefrom in a light most favorable to the conviction, and will affirm "if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004); *Bailey*, 979 N.E.2d at 135.

*Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013). This is because the factfinder, and not the appellate court, "is obliged to determine not only whom to believe, but also what portions of conflicting testimony to believe, and is not required to believe a witness's testimony[.]" *Perry v. State*, 78 N.E.3d 1, 8 (Ind. Ct. App. 2017) (internal quotation and brackets omitted).

[11] "A person who breaks and enters the building or structure of another person, with intent to commit a felony or theft in it, commits burglary." Ind. Code § 35-43-2-1. The offense is "a Level 4 felony if the building or structure is a dwelling[.]" Ind. Code § 35-43-2-1(1). Furthermore, "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person: (1) has not been prosecuted for the offense; (2) has not been convicted of the offense; or (3) has been acquitted of the offense." Ind. Code § 35-41-2-4.

> A defendant may be charged as the principal but convicted as an accomplice. *Jester v. State*, 724 N.E.2d 235, 241 (Ind. 2000); *Wise v. State*, 719 N.E.2d 1192, 1198 (Ind. 1999). Generally there is no distinction between the criminal liability of an accomplice and a principal, *Wise*, 719 N.E.2d at 1198, although evidence that the defendant participated in every element of the underlying offense is not necessary to convict a defendant as an accomplice. *Vitek v.*

*State*, 750 N.E.2d 346, 352 (Ind. 2001). "There is no bright line rule in determining accomplice liability; the particular facts and circumstances of each case determine whether a person was an accomplice." *Id.* at 353. We consider four factors to determine whether a defendant acted as an accomplice: (1) presence at the scene of the crime; (2) companionship with another at scene of crime; (3) failure to oppose commission of crime; and (4) course of conduct before, during, and after occurrence of crime. *Id.* at 352.

*Castillo v. State*, 974 N.E.2d 458, 466 (Ind. 2012). The evidence most favorable to Ritchie's Level 4 felony burglary conviction indicates that he acted as an accomplice to the breaking and entering of Jared's dwelling and the theft that occurred therein.

[12] Around 9:00 p.m. on the night of the burglary, Ritchie called Apodaca and asked if he could stop by. When Ritchie arrived at Apodaca's home a few minutes later, they went to Apodaca's bedroom and Ritchie "laid down on [Apodaca's] bed" and looked out a window facing Jared's home. Tr. Vol. III p. 149. Ritchie "was acting, like, really, really, funny." Tr. Vol. III p. 152. Apodaca did not "even know what the purpose of him coming over was" because Ritchie "didn't say anything." Tr. Vol. III p. 153. He just kept talking through an "app" on his cellular phone that made it sound like he was "talking on a walkie-talkie." Tr. Vol. III p. 154. Apodaca heard a male voice coming from "the other end of the walkie-talkie app thing on his phone." Tr. Vol. III p. 155. Ritchie stayed in Apodaca's bedroom for "probably 10 or 15 minutes." Tr. Vol. III p. 158. At some point, Apodaca heard a horn honk outside in front

of her home. She also heard the sound of the horn honking through Ritchie's phone "like it echoed through his phone." Tr. Vol. III p. 158.

[13] Eventually, Apodaca heard her nephew, Payne, knocking on the door and "screaming" for her to open the door. Tr. Vol. III p. 159. Upon arriving at the home, Payne observed two televisions sitting in the backyard. Ritchie loaded the televisions into his vehicle before driving away. It was later discovered that Smith's back door was "cracked open," the screen door was "off its hinges," and two televisions were missing from the home. Tr. Vol. III p. 73.

[14] These facts support the inference that Ritchie was working in concert with another individual who broke and entered Smith's home, removing two televisions from the home. Ritchie's actions are consistent with one acting as a "lookout" while another committed the burglary and theft. In addition, the fact that he loaded the televisions into a car and drove away suggests that he was an active participant in the crime. Given that there is no distinction between the criminal liability of an accomplice and a principal, *see Castillo*, 974 N.E.2d at 466, we conclude that the evidence is sufficient to sustain Ritchie's conviction for burglary.

## III. Admission of Evidence

[15] "We review the trial court's ruling on the admission of evidence for an abuse of discretion." *Espinoza v. State*, 859 N.E.2d 375, 381 (Ind. Ct. App. 2006). "We reverse only where the decision is clearly against the logic and effect of the facts and circumstances." *Id.* Ritchie argues that the trial court abused its discretion

in admitting Apodaca's testimony regarding a question asked by Payne and her opinion that Ritchie was likely engaged in criminal behavior.

## A. Question Asked by Payne

Apodaca testified during trial that when Payne appeared at the door to her home, he asked why there were two televisions in the backyard. Ritchie objected, arguing that the testimony was inadmissible hearsay. The trial court overruled the objection and admitted the testimony, indicating that it believed "the foundation's been laid for an excited utterance." Tr. Vol. III p. 172.

> Hearsay is an out of court statement offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). It is inadmissible unless it falls under an exception. Evid. R. 802. Among the exceptions to the hearsay rule is: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid. R. 803(2). Determining whether a statement constitutes an excited utterance is within the trial court's discretion and its ruling will be reversed only for an abuse of that discretion. *See Yamobi v. State*, 672 N.E.2d 1344, 1346 (Ind. 1996).

> For a hearsay statement to be admitted as an excited utterance, three elements must be shown: (1) a startling event, (2) a statement made by a declarant while under the stress of excitement caused by the event, and (3) that the statement relates to the event. *Id.* This is not a mechanical test. It turns on whether the statement was inherently reliable because the witness was under the stress of an event and unlikely to make deliberate falsifications. *Id.*; 13 Robert Lowell Miller, Jr., *Indiana Practice* § 803.102 (2d ed.1995).

*Jenkins v. State*, 725 N.E.2d 66, 68 (Ind. 2000). To be admissible as an excited utterance, "[t]he statement must be trustworthy under the facts of the particular case." *Yamobi*, 672 N.E.2d at 1346. In making a decision regarding trustworthiness, "[t]he trial court should focus on whether the statement was made while the declarant was under the influence of the excitement engendered by the startling event." *Id.* Stated differently, "the statement must be unrehearsed and made while still under the stress of excitement from the startling event." *Id.*

[17] In attempting to prove that Payne's question regarding the televisions was an excited utterance, Apodaca testified that when Payne appeared at the door, he was "highly upset" and "confused." In this state, he immediately asked why there were two televisions in the backyard. The trial court found that this testimony was sufficient to prove that Payne experienced a startling event when he found the televisions sitting in the backyard, he asked the question while under the stress of excitement caused by the event, and his question related to the event. The trial court, which was in the best position to judge Payne's state of mind, found that Payne made an unrehearsed statement while under the stress of discovering the televisions. We cannot say that the trial court's finding in this regard amounts to an abuse of the court's discretion.

[18] In addition, Payne testified that he found the televisions sitting upright, as if they had been placed on the ground by someone, in the backyard against a "fence row" and that he thought "that was awful odd." Tr. Vol. III p. 228. Payne indicated that he "knew something wasn't right with the TVs on the

ground. You don't see – find TVs at 9:30 at night on the ground." Tr. Vol. III p. 229. He further indicated that the televisions had not been sitting on the ground earlier that afternoon. "Admission of hearsay evidence is not grounds for reversal where it is merely cumulative of other evidence admitted." *McClain v. State*, 675 N.E.2d 329, 331–32 (Ind. 1996). Given that Apodaca's testimony regarding Payne's confusion and question relating to the televisions was cumulative of Payne's unchallenged testimony regarding his confusion after discovering the televisions, any error in the admission of Apodaca's testimony was harmless and reversal is not required. *See id.*

## B. Apodaca's Opinion Relating to Ritchie's Conduct

[19] Trial Rule 704 provides that while opinion testimony is generally admissible, "[w]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions."

> The jury, not the witness, is responsible for deciding the ultimate issues in a trial, and opinion testimony concerning guilt "invades the province of the jury in determining what weight to place on a witness' testimony." *Blanchard v. State*, 802 N.E.2d 14, 34 (Ind. Ct. App. 2004) (citing *Head v. State*, 519 N.E.2d 151, 153 (Ind. 1988)). In other words, such testimony usurps the jury's "right to determine the law and the facts," Ind. Const. art. I, § 19, and is therefore inadmissible.

*Williams v. State*, 43 N.E.3d 578, 581 (Ind. 2015).

During trial, the State asked Apodaca "So did you suspect Mr. Richie was involved in something[?]" Tr. Vol. III p. 173. Ritchie objected to the State's question on Evidence Rule 704(b) grounds and the State withdrew its question. After rephrasing its question, the State asked Apodaca "In your mind, Christy, what did you believe Mr. Ritchie was doing?" Tr. Vol. III p. 174. Ritchie objected on grounds that the question called for speculation. The trial court overruled Ritchie's objection and instructed the State to "put a time frame on it." Tr. Vol. III p. 174. The State then asked Apodaca

> [Question]: Okay. Christy, when you're standing there, at that moment in time … [i]n your mind, what were you thinking at that point in time as it relates to Mr. Ritchie?
>
> [Answer]: Somebody was getting robbed.
>
> [Question]: Okay. And did you believe Mr. Ritchie might have been involved?
>
> [Answer]: Yeah.

Tr. Vol. III p. 174. Ritchie objected, again on the grounds that the question called for speculation. The trial court overruled Ritchie's objection and allowed Apodaca's answer into evidence. The State followed up these questions by asking Apodaca "Did you believe Mr. Ritchie was involved in some illegal activity?" Tr. Vol. III p. 175. Ritchie did not object to this last question.

[21] While Ritchie objected to a question that was withdrawn by the State on 704(b) grounds, the record reveals that, in so far as he objected to the challenged questions, he did so on the grounds that the questions called for speculation,

not that the questions violated Evidence Rule 704(b). "It is well[-]settled that a party may not object to the admission of evidence 'on one ground at trial and seek reversal on appeal using a different ground.'" *Bush v. State*, 929 N.E.2d 897, 898 (Ind. Ct. App. 2010) (quoting *Malone v. State*, 700 N.E.2d 780, 784 (Ind. 1998)). When, as here, a party does so, "[t]he issue is waived." *Malone*, 700 N.E.2d at 784. Moreover, even if it was error to admit the challenged evidence, given the independent evidence of Ritchie's guilt, such error was harmless. *See McClain*, 675 N.E.2d at 331–32.

# IV. Failure to Declare Mistrial

[22]     When improper statements are alleged to have been made before the jury, the correct procedure is to request the trial court to admonish the jury. *See Cooper v. State*, 854 N.E.2d 831, 836 (Ind. 2006) (discussing the procedure to follow if a party presents an improper argument). "If the party is not satisfied with the admonishment, then he or she should move for a mistrial." *Id.* Failure to request an admonishment or to move for a mistrial results in waiver unless the appellant can show fundamental error. *See Knapp v. State*, 9 N.E.3d 1274, 1281 (Ind. 2014); *Cooper*, 854 N.E.2d at 836. Again, fundamental error is "an error that made a fair trial impossible or constituted a clearly blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm." *Knapp*, 9 N.E.3d at 1281 (internal quotation and brackets omitted). It is a daunting standard that applies only in egregious circumstances. *Id.*

Ritchie argues that the trial court erred by failing to declare a mistrial after an unidentified individual made an unsolicited statement about Payne during trial. Specifically, during cross-examination of Payne regarding how he was familiar with one of the investigating officers, an unidentified person stated "Bailey's a good boy." Tr. Vol. IV p. 14. Neither the trial court nor any of the attorneys responded in any fashion to this statement and there is no indication in the record that the trial court, the attorneys, or the jury heard the statement. Ritchie merely speculates that the jury might have heard the statement because the court reporter heard the statement and included it in the transcript. We conclude that such speculation, without more, is insufficient to demonstrate fundamental error.

Furthermore, even if the jury did hear the unsolicited statement, the jury was instructed that it could only consider statements admitted into evidence together. We will presume that the jury followed the trial court's instruction and only considered statements that were admitted into evidence. *See Gibson v. State*, 43 N.E.3d 231, 241 n.5 (Ind. 2015) ("Absent evidence to the contrary, we generally presume the jury follows the trial court's instructions in reaching its determination[.]").

# V. Prosecutorial Misconduct

"[I]n reviewing a claim of prosecutorial misconduct, we determine: (1) whether the prosecutor engaged in misconduct, and if so, (2) whether that misconduct, under all of the circumstances, placed the defendant in a position of grave peril

to which he should not have been subjected." *Sobolewski v. State*, 889 N.E.2d 849, 858 (Ind. Ct. App. 2008).

> To preserve a claim of prosecutorial misconduct, the defendant must ask the trial court, at the time the misconduct occurs, to admonish the jury or move for a mistrial if admonishment is inadequate. [*Cooper*, 854 N.E.2d at 835.] Failure to request an admonishment or a mistrial waives the claim, unless the defendant can demonstrate that the misconduct rises to the level of fundamental error. *Id.*

*Castillo*, 974 N.E.2d at 468.

[26] Ritchie claims that the State committed prosecutorial misconduct by asking him three questions during redirect examination that were aimed at proving he was lying. The first question related to whether Ritchie had been represented by other attorneys at some point during the proceedings. The second related to whether one of his prior attorneys had filed an alibi defense. The third related to whether Ritchie believed that an individual acting as a lookout is as guilty as the person who actually committed the crime.

[27] Ritchie objected to the second and third questions and the trial court sustained the objections. In instructing the jury, the trial court explicitly instructed the jury that "During a trial, when I sustain an objection, disregard the question and answer." Tr. Vol. II p. 219. The trial court further instructed the jury that

> During the progress of the trial certain question may have been asked which the Court may have ruled as not admissible into evidence. You must not concern yourselves with the reasons for any such ruling since the production of evidence is strictly

controlled by rules of law. You must not consider any testimony which the Court may have ordered not admitted or ordered stricken from the record. In fact, such matter is to be treated as though you had never heard it.

Tr. Vol. V p. 53. Again, we presume that the jury followed the trial court's instructions and only considered questions and answers that were admitted into evidence. *See Gibson*, 43 N.E.3d at 241 n.5.

[28] Furthermore, Ritchie did not request an admonishment or move for a mistrial. As such, he must demonstrate that he suffered fundamental error. In evaluating the issue of fundamental error, our task is to determine whether the misconduct had such an undeniable and substantial effect on the jury's decision that a fair trial was impossible. *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014).

[29] Again, the trial court sustained Ritchie's objections to the second and third questions. As such, only the fact that Ritchie had been represented by different attorneys at some point during the proceedings was included in the record and potentially considered by the jury. Ritchie has failed to demonstrate that he was prejudiced by this statement and we cannot say that inclusion of this question in the record rendered a fair trial impossible.

# VI. Cumulative Effect

[30] A defendant is entitled to a fair trial, not a perfect trial. *Inman v. State*, 4 N.E.3d 190, 203 (Ind. 2014). The Indiana Supreme Court has been willing to assume, "for the sake of argument, that under some circumstances the cumulative effect of trial errors may warrant reversal even if each might be deemed harmless in

isolation, in this case it is clear in light of the evidence of guilt that no prejudice resulted from any of the erroneous rulings, individually or cumulatively." *Hubbell v. State*, 754 N.E.2d 884, 895 (Ind. 2001).

[31] Any errors or imperfections in Ritchie's trial were more isolated than pervasive in nature. The cumulative effect of these alleged errors was minor at best and thus did not deprive Ritchie of his right to a fair trial or his right to complete justice. Ritchie, therefore, has failed to demonstrate that he was prejudiced by any of the allegedly erroneous rulings, individually or cumulatively. Because Ritchie did not suffer prejudice from cumulative error, he is not entitled to a reversal of his convictions. *See Inman*, 4 N.E.3d at 203 ("Taken as a whole, not only were all errors harmless, but the cumulative effect of these errors was minor at best and thus did not deprive Inman of his right to a fair trial or his right to complete justice. Because Inman in no way suffered any prejudice from cumulative error, he is not entitled to reversal of his convictions.").

[32] The judgment of the trial court is affirmed.

Vaidik, C.J., and Riley, J., concur.